Hastings *v.* Jackson.

4-6189                                                    198 S. W. 2d 305

Opinion delivered February 24 ,1941.

*Arthur L. Adams,* for appellant.

*Smith & Judkins* and *O. C. Blackford,* for appellee.

McHaney, J.   On January 6, 1929, R. M. Jackson died testate at Hardy, Sharp county, Arkansas. Appellant is a daughter of said R. M. Jackson and appellees are two of his sons, his widow and a grandson, all beneficiaries or legatees under his will.

The will is lengthy and somewhat prolix. Paragraph 2 thereof "bequeaths" to each of his children and his

grandson and their bodily heirs "all of the personal and real estate or the income thereof except the legacy hereinafter given and bequeathed to my wife, to hold said property in trust for my said wife's benefit, and for each of my children and their benefit—," including his grandson. Appellee, R. A. Jackson, was appointed guardian of the grandson, whose father was dead, to serve as such guardian without bond until the ward became 21 years old, in paragraph 3. The 4th paragraph gave to his wife all his household furniture and the mansion house in Hardy, "for her own use and behalf during her natural life, and out of my said estate to be paid by my executors hereinafter named to my said wife the sum of one hundred dollars per calendar month. This bequeath is in lieu of dower." In paragraph 5 he appointed appellee, R. A. Jackson, sole executor to serve for a period of ten years without bond, and at the end of that period the heirs were to select one of their number to so serve. In this paragraph he stated: "This does not disqualify any one of my children from being selected to serve as executor for a like period of years as it is my intention to hold and keep my estate intact for the benefit of my wife, children and bodily heirs—." He further said in this paragraph: "And for looking after the affairs of my estate, paying the taxes and the sum of one hundred dollars per calendar month to my wife and keeping my estate intact it is my will and I direct that the executor be paid two per cent. of the amount paid out by them for their services, which I deem sufficient. That my intentions may be fully understood in this my will, I mean and intend that my real estate be held from sale and that the proceeds be used by my said children in paying my just debts and the gift to my wife as mentioned, that at the death of either of my said heirs that the real estate descend to its heirs according to its or their several interests, and that the title to my real estate descend as aforesaid, and that the proceeds be used for their several interests and that said lands be not sold or conveyed to any one thereof or any other party. In other words, I mean and intend to create an estate tail so far as the laws of Arkansas permit. And that the executor mentioned herein or any other

child who may take his place as mentioned as aforesaid be and they are required to make an annual inventory of the proceeds received from the rents and profits of said lands and the actual necessary expenses of the payment of taxes and the amount to be paid monthly to my wife and file the same amount my real estate papers so as all concerned me at any time may see and investigate the same. That my real estate be not sold as aforesaid."

In paragraph 9 he again states that it is his intention that his personal property be not divided, but that it be held in trust for his wife for the purpose of carrying out paragraph 4; that his stock in the R. M. Jackson Company, a mercantile corporation, be canceled and reissued to her for her benefit and at her death for the benefit of their children; and he then said: "It is my intention that he is hereby selected to carry out the above trust and is to serve without bond.

"And to clear up the conflict between this paragraph and paragraph two it is my last will and I hereby give to my sons, Robert A. Jackson and Floyd J. Jackson, and to my daughter, Pauline Jackson Hastings, and to my grandson, Robert Taylor Jackson, being my heirs at law, the sum of one dollar each to be paid out of my personal property and all of the rest of my personal property after all my just debts are paid is to be handled as stated in this paragraph and of course at the death of my wife, Mattie Jackson, then the personal property is to be divided equally between the above stated heirs. Nothing in this paragraph is to be construed as conflicting with my intention of creating the estate tail, as stipulated in this my last will, that is as far as the laws of Arkansas permit. It is my intention that there be no more probation of my affairs than is necessary to establish this will and the guardianship and executorship created thereunder."

Appellee R. A. Jackson undertook the burdens imposed by this will. He was appointed executor by the probate court and guardian of the infant, Robert Taylor Jackson, and proceeded to administer the affairs of said estate, as he thought, in strict compliance with the provi-

sions of said will. He filed no inventory, nor did he make and file any annual statements or settlements with the probate court, but did keep the accounts, operated the properties, keeping them intact, paid the taxes, paid the heirs and legatees certain dividends, and kept his accounts, books and records with the other papers of said estate, as he thought the will directed. Appellant became dissatisfied with his management and sought to require him to make bond and to make a report of his stewardship. Their relations became unfriendly and a citation was issued against him to show cause. He and the other appellees thereupon brought this suit in the chancery court to construe the will and to determine his status under it. The matter progressed slowly, but finally, by agreement, the suit became one for an accounting, and by consent of all parties a master, the late Dud Bassett, was appointed to and did state an account. He made a report and supplemental report to which both parties filed numerous exceptions and asked for special findings, but in neither did the master find or report any willful or corrupt wrong on the part of R. A. Jackson. On March 8, 1940, the court rendered its final decree, in which all exceptions and all requests for special findings of all the parties were overruled and denied, except that the court found that the widow, Mattie Jackson, had been overpaid in her monthly allowance of $100 under paragraph 4 of the will, because the court was of the opinion that the estate should not pay the cost of necessary improvements on the homestead and the taxes, which amounts had theretofore been paid by the estate, and which amounts were charged back to her to be deducted from her monthly allowance at the rate of $50 per month. A decree to this effect was accordingly entered. There is here an appeal and a cross-appeal by appellees.

Disposing of the cross-appeal first, we are of the opinion that the court erred in the construction of the will to the extent of charging the widow with necessary improvements and the taxes on the homestead, and, of course, in requiring her to pay same in a sum in excess of $1,000 from the monthly allowance given her under

the will, at the rate of $50 per month. We think it certain that the testator's first and foremost thought was to provide a home for his elderly wife and to provide her with sufficient. means to live in comfort and without financial embarrassment the remainder of her life. To this end he impounded all of his estate, both real and personal, provided same should not be sold but should be kept intact, and operated by his son, R. A. Jackson, in whom he had implicit trust and confidence. For instance, in paragraph two, he conveyed all his estate to his children and grandson, naming them, and the income therefrom, "except the legacy hereinafter given to my wife, to hold said property in trust for my said wife's benefit, and for each of my children and their benefit." And in paragraph five, he fixed the compensation for his executor "for looking after the affairs of my estate, paying the taxes and the sum of one hundred dollars per calendar month to my wife and keeping my estate intact." At the close of said paragraph he directed his executor "to make an annual inventory of the proceeds received from the rents and profits of said lands and the actual necessary expenses of the payment of taxes and the amount to be paid monthly to my wife and file same, etc." When the will is considered as a whole, we think the conclusion is inescapable that it was the testator's intention to give his wife $100 per month net, and that she should not be charged with the cost of necessary improvements to the homestead or the taxes thereon, as to do so would deprive her of a portion of the $100 per month which the testator was so solicitous that she have, as evidenced by its frequent repetition in the will. The provision made for her in paragraph four as to the mansion house is not the ordinary life estate where the life tenant is chargeable with taxes and improvements. It was given to her for life, it is true, but it was coupled with a legacy of $100 per month and other provisions for the executor to pay the taxes and other necessary expenses on the whole estate, all of which, including the homestead, should be held intact for the lifetime of the widow. The heirs or other legatees were not to share

in any net income until all expenses and taxes and the $100 per month to her were paid.

On the direct appeal, appellant makes three contentions: 1, that the requirements of statutes relating to administration and guardianship cannot be abrogated by will; 2, that the requirement as to bond cannot be nullified by will, as the court has the discretion to require bond although the will otherwise provides; and 3, a trustee is bound to make and a court of equity is bound to require regular accounting. These propositions of law are not disputed by appellees, and that is exactly what the trial court required, that is, it required an accounting to be made, appointed a master, an accountant, to state the account, appointed, with the consent of all parties, a new trustee and required him to give bond for the faithful performance of his trust. Both the master and the court found that appellee, R. A. Jackson, had faithfully performed the trust imposed upon him by his father. True he did not file any accounting in the probate court, but the will very definitely did not require him to do so. Mismanagement of the estate as to the liquidation of the R. M. Jackson Company is argued, but no corrupt misappropriation of funds is charged or proven. It is suggested that R. A. Jackson took an undue advantage of the others when he purchased from them the undertaking part of the business for which he paid them $100 each and later sold at a substantial profit to himself. But appellant is the only one complaining and she voluntarily sold her share with full knowledge of what she was doing and she was under no disability at the time.

We think it unnecessary to discuss the matters argued in detail further. We are of the opinion that the testator intended, by what he said in his will, that his son should take charge of the trust estate, consisting of all his estate, and operate same as a trustee without the necessity of accounting therefor to the probate court, but only to the interested parties. He so provided at the end of paragraph nine of his will in this language: "It is my intention that there be no more probation of my affairs than is necessary to establish this will and the guardianship and executorship created thereunder."

This is an estate of substantial value, at this time perhaps $50,000. It has been kept intact, except for the necessary liquidation of the corporation. It has weathered a great financial depression, paid the taxes and other expenses, paid the widow her legacy, paid substantial dividends to the other legatees or devisees, and has substantially increased the personal property holdings. We have failed to find in the evidence any substantial evidence of fraud or corruption on the part of the executor-trustee who has now been replaced by another satisfactory to all parties, and we think the decree of the court is correct and should be affirmed, except as hereinabove stated. In that respect it is modified and as modified is affirmed.

It is so ordered.

GRIFFIN SMITH, C. J., dissents.

The Chief Justice thinks that, in view of the voluminous record, involving hundreds of typed pages relating to transactions covering a period of more than ten years, neither this court nor the chancellor is able to determine the true status, and for this reason the cause should be remanded with directions that the master be required to employ an auditor to state an account.