JACKSON *v.* JACKSON, TRUSTEE.

4-8166

201 S. W. 2d 218

Opinion delivered April 21, 1947.

*Smith & Ponder,* for appellant.

*Chas. F. Cole,* for appellee.

548

MINOR W. MILLWEE, Justice. Appellant, Mattie Jackson, is the widow of R. M. Jackson who died testate at Hardy, Sharp county, Arkansas, in January, 1929. Appellees are two sons, a daughter and grandson of R. M. Jackson, deceased, and Addie M. Jackson, trustee of his estate.

The will of R. M. Jackson was construed by this court in *Hastings* v. *Jackson*, 201 Ark. 1005, 148 S. W. 2d 305. It was there said: ''We think it certain that the testator's first and foremost thought was to provide a home for his elderly wife and to provide her with sufficient means to live in comfort and without financial embarrassment the remainder of her life. To this end he impounded all of his estate, both real and personal, provided same should not be sold but should be kept intact, and operated by his son, R. A. Jackson, in whom he had implicit trust and confidence. . '. . When the will is considered as a whole, we think the conclusion is inescapable that it was the testator's intention to give his wife $100 per month net, and that she should not be charged with the cost of necessary improvements to the homestead or the taxes thereon, as to do so would deprive her of a portion of the $100 per month which the testator was so solicitous that she have, as evidenced by its frequent repetition in the will. The provision made for her in paragraph four as to the mansion house is not the ordinary life estate where the life tenant is chargeable with taxes and improvements. It was given to her for life, it is true, but it was coupled with a legacy of $100 per month and other provisions for the executor to pay the taxes and other necessary expenses on the whole estate, all of which, including the homestead, should be held intact for the lifetime of the widow. The heirs or other legatees were not to share in any net income until all expenses and taxes and the $100 per month to her were paid.''

Appellant continued to reside in the home place at Hardy until October, 1945, when a fire extensively damaged the house and destroyed most of appellant's per-

sonal and household effects. In August, 1944, appellant procured a policy of fire insurance on the dwelling house in the amount of $1,500 for a term of three years. The property was insured in her name and the premium paid from her own funds.

On March 21, 1946, the insurance carrier filed a bill of interpleader in the Sharp Chancery Court pursuant to the provisions of Act 141 of 1943. It admitted liability for the face value of the policy, but alleged that it was unable to make payment thereof because of the conflicting claims of appellant and appellees over the right to the proceeds of the policy. The company deposited $1,500 in the registry of the court and prayed that it be discharged from further liability, and that the parties in interest be required to settle the right to the proceeds of the policy between themselves. Appellant and appellees then filed their respective petitions in which each party claimed the right to receive the amount deposited to the exclusion of the other, and the insurance company was discharged from further liability.

A trial of the issues on September 12, 1946, resulted in a decree in favor of appellees and the clerk of the court was directed to pay the insurance proceeds to the trustee, for the use and benefit of the estate of R. M. Jackson, deceased. The trustee was directed to refund to appellant the premium of $43.87 which she paid on said policy. The court further directed the trustee to repair the house as speedily as possible.

Appellant testified that she procured the policy of insurance for her own benefit and understood that both the house and furniture were covered by the policy, which insured the dwelling only. The loss of her household goods alone exceeded $1,500. She has resided in the home of a son since the fire, but was receiving rents from rooms on the second floor of the dwelling which had been repaired at the time of the trial. It was her intention to move back to the home place as soon as repairs to the first floor were completed.

The trustee of the R. M. Jackson estate testified that at no time prior to the fire had she procured insurance on the property and she did not know whether appellant had a policy. She had been serving as trustee for three years at the time of the trial. At the time of her appointment the estate was heavily involved and without funds to purchase insurance on the dwelling. As trustee, she proceeded to repair the damaged dwelling in the early part of 1946 and had expended $1,538 for such repairs at the time of the trial. The complete repair bill would amount to approximately $2,000.

We think the trial court erred in holding the trustee of the estate of R. M. Jackson, deceased, entitled to the proceeds of the policy procured by appellant. The question does not seem to have been heretofore decided by this court. In those cases where an ordinary legal life tenancy is involved the rule followed in most jurisdictions is stated in 33 Am. Jur., Life Estates, Remainders, etc., § 332, p. 838, as follows: "It is clearly the general rule that where a legal life tenant insures the property in his own name and for his own benefit and pays the premiums from his own funds, he is, at least in the absence of a fiduciary relationship between him and the remainderman existing apart from the nature and incidents of the tenancy itself, or of an agreement between him and the remainderman as to which of them shall procure and maintain insurance, entitled to the proceeds of the insurance upon a loss; and the fact that the insurance was for the whole value of the fee is not generally regarded as affecting the right of the life tenant to the whole amount of the proceeds."

In an extensive annotation on the subject in 126 A. L. R. 336, many cases are reviewed in support of the above rule. One of the leading cases on the subject is that of *Harrison* v. *Pepper*, 166 Mass. 288, 44 N. E. 222, 33 L. R. A. 239, 55 Am. St. Rep. 404. In that case the plaintiff, a remainderman of real property, sought to compel the life tenant to place the sum received by her for insurance on the property in trust for plaintiff until

the life tenant's death, with income payable to the life tenant during her life. In denying the relief sought by the plaintiff, the Massachusetts court said: "It is plain that the plaintiff is not entitled to recover unless she has some claim upon the funds in the hands of the defendant. In the absence of anything that requires it in the instrument creating the estate, or of any agreement to that effect on the part of the life tenant, we think that the life tenant is not bound to keep the premises insured for the benefit of the remainderman. Each can insure his own interest, but, in the absence of any stipulation or agreement, neither has any claim upon the proceeds of the other's policy, any more than in the case of mortgagor and mortgagee, or lessor and lessee, or vendor and vendee. . . . The contract of insurance is a personal contract, and inures to the benefit of the party with whom it is made, and by whom the premiums are paid."

In the case of *Blanchard* v. *Kingston,* 222 Mich. 631, 193 N. W. 241, Chief Justice WIEST, speaking for the court, said: "All authorities hold that a life tenant has an insurable interest. The authorities are not in harmony upon the extent to which such insurance may be taken out by the life tenant, some holding it cannot go beyond the interest of the life tenant, and others that it may go to the full value of the property. If there is no obligation to insure for the benefit of remaindermen, either in the instrument creating the tenancy or under agreement with the remaindermen, then the life tenant may be the full beneficiary. By the great weight of authority insurance received by the life tenant under his own permitted contract is not impressed with any trust for the benefit of remaindermen but wholly belongs to the life tenant."

In 31 C. J. S., Estates, § 46, p. 59, it is said: "It has been stated, as a general rule, that the life tenant is not bound to keep the premises insured for the benefit of the remainderman or reversioner, unless there is an agreement that he shall do so, or a provision to that effect in the instrument creating the estate; but that either may

insure for his own benefit, the tenant for life and the remainderman paying insurance for their respective interests. Ordinarily this is what is done, and it has been held that neither the life tenant nor the remainderman will be benefited by the other's policy.''

In Restatement of the Law of Property, vol. I, § 123, sub-sec. 2, the rule is thus stated: ''When a policy of insurance against the destruction of, or damage to, land or structures thereon, exists only for the protection of the interest of the owner of the estate for life, the owner of the estate for life has a privilege to retain, as against all claims of owners of future interests in the same land or structures, all moneys received by such owner as the proceeds of such policy of insurance.''

A few courts have adopted a so-called minority rule to the effect that a life tenant, in procuring fire insurance, acts as a trustee for the remaindermen, and that public policy requires that the proceeds of such policy should be used in rebuilding, or go to the remaindermen, reserving merely the interest for life for the life tenant. *Green* v. *Green,* 50 S. C. 514, 27 S. E. 952, 62 Am. St. Rep. 846; *Clark* v. *Leverett,* 159 Ga. 487, 126 S. E. 258, 37 A. L. R. 180.

Under the will of R. M. Jackson, deceased, as construed by this court in *Hastings* v. *Jackson, supra,* appellant was given a life estate in the homestead free from the obligation ordinarily imposed upon a life tenant to pay taxes, improvements and other expenses necessary to the proper preservation of the property. The trustee of the estate had the legal right and it was her duty, under the will, to maintain reasonable insurance on all the trust property, including the homestead. There was no obligation resting upon appellant, in procuring insurance, to protect the interest of the remaindermen under the terms of the will. On the contrary, any fiduciary duty resting on the parties in this respect was owing from the trustee and remaindermen to the life tenant. So, if we were disposed to follow the so-called minority rule adopted by the courts of South Carolina and Geor-

gia, the basic reason upon which the rule rests, *i. e.*, that the life tenant acts as trustee for the remaindermen in procuring insurance, would appear to be lacking under the peculiar provisions of the will in the instant case.

There was no agreement on the part of appellant to keep the premises insured for the benefit of the estate or the owners of future interests in the property. Appellant procured the insurance in her own name and for her own benefit. The premium was paid from her own funds under a personal contract of indemnity with the insurance company. The trustee failed to insure the property and was not a party to the insurance contract. She testified that the estate was heavily involved at the time of her appointment as trustee and that no funds were available to purchase insurance on the property, but the evidence fails to disclose whether this condition existed either at the time appellant procured the policy or when the loss occurred. The R. M. Jackson estate was estimated by this court to be of the value of $50,000 when the case was here on the former appeal in 1941.

Since appellant insured her own interest in the premises at her own expense and was under no obligation under the will to insure for the benefit of the remaindermen, and having made no agreement to do so, she is entitled to the proceeds of her policy of insurance free from the claims of appellees. It follows that the decree of the trial court must be reversed and the cause remanded with directions to the trustee of the R. M. Jackson estate to pay the proceeds of the policy to appellant. It is so ordered.