WALLER *v.* WALLER.

4-9685                                    245 S. W. 2d 814

Opinion delivered February 11, 1952.

*John E. Hooker,* for appellant.

*Hendrix Rowell,* for appellee.

ED. F. McFADDIN, Justice. By this appeal, appellant William Waller, questions the legality of an order made by the Jefferson Chancery Court requiring him to pay his divorced wife, Cleo Waller, the sum of $40 per month for the support of their 3-year-old daughter.

Dates aid in an understanding of the facts:

a) On July 9, 1949, the Ouachita Chancery Court awarded William Waller a divorce from Cleo Waller, on the ground of indignities. As regards the custody and support of the child, the said divorce decree recites:

". . . that one child, a little girl named Pamela Lee, was born of this marriage on March 20, 1948, and that the child is with the defendant in Louisiana and the parties have agreed that no order will be entered with reference to her custody or support."

b) In early October, 1950, William Waller went to Louisiana, and without consent, took possession of the child and brought her to Jefferson County, Arkansas. Thereupon, on October 7, 1950, Cleo Waller filed in the Jefferson Chancery Court, a petition for writ of *habeas corpus,* which recited as facts all the above statements, and, after the specific prayer for *habeas corpus,* concluded:

". . . . and for such other relief as this court may deem just, proper and equitable."

c) In resisting the *habeas corpus,* William Waller stated in his pleading:

". . . that the petitioner is not a fit and proper person to have the custody of Pamela Lee Waller, the child referred to in the petition; and the respondent further states that if the petitioner were a fit and proper person to have the custody of said child at the time of the decree hereinabove referred to was entered, the custody of said child should now be awarded to respondent because of the change in conditions which have taken place, since said decree was rendered."

He prayed, *inter alia*:

". . . that the petition upon the whole case be denied and that he be awarded the custody of said minor child; and for other general and proper relief."

d) On November 15, 1950, there was a trial before the Jefferson Chancery Court, and a decree was rendered which recited that testimony was heard; but no part of the testimony at such hearing is before us in the present transcript. The November 15, 1950, decree (1) awarded the custody of the child to the mother, Cleo Waller, (2) gave the father, William Waller, the right to have the child one week every three months, and (3)

". . . decreed that the defendant, William J. Waller, pay to the plaintiff, Cleo S. Waller, the sum of $40 per month, for the support and maintenance of said Pamela Lee Waller, beginning on the .first day of December, 1950, and continue to pay a like amount on the first day of each month thereafter, subject to the further orders of this court."

e) William Waller did not make any of the monthly payments, as required by the November 15, 1950, decree. In early March, 1951, he went to Louisiana and forceably took possession of the child and brought her to Jefferson County, Arkansas. Thereupon, Cleo Waller asked the Jefferson Chancery Court to punish William Waller for contempt. He resisted the proceedings on the grounds later to be discussed.

After hearing the cause, the Jefferson Chancery Court (a) adjudged the contempt; (b) reaffirmed its decree of November 15, 1950, for support payments for the child; and (c) awarded Mrs. Waller $25 attorney's fee as a plain judgment. From the said decree of March 13, 1951, William Waller brings this appeal. It was prayed out of this Court on September 12, 1951, which was too late to appeal from the November 15, 1950, decree. (See § 27-2106 Ark. Stats.) The only evidence in the present record is that taken at the March, 1951, hearing.

William Waller states his argument for reversal in these words:

"Appellant, therefore, has duly prosecuted this appeal to reverse the ruling of the Chancellor in refusing to set aside that part of the decree of November 15, 1950, directing the payment by him to appellee of the sum of $40 per month for the support and maintenance of the minor child of the parties. Our contention is, that, as this was a *Habeas Corpus* proceeding, the only authority the Chancellor had was to fix the custody of the child" . . . "We concede that the Court had the power to fix the custody of the minor child in the *Habeas Corpus* proceedings, but deny, with all the emphasis at our

command, that the Court had the authority to award maintenance in such proceeding. *Habeas Corpus* is a summary proceeding having as its primary and only purpose, the awarding of the custody of the child one way or the other." . . . "It will be seen, therefore, from what we have heretofore said, that only a single question of law is presented by this appeal: Has the Chancery Court in a *Habeas Corpus* proceeding, brought for the purpose of obtaining custody of a minor child, the right to award and order paid an amount of money for the support and maintenance of such child?"

Stating it concisely, appellant contends that the order of November 15, 1950, adjudging support money to be paid by him to his former wife for the support of their child, was absolutely void, and that he could not be guilty of contempt in failing to make such payments. In support of his contention, appellant's learned counsel cites the Virginia case of *Buchanan* v. *Buchanan,* 170 Va. 458, 197 S. E. 426, 116 A. L. R. 688; and, following the reported decision, there is, in 116 A. L. R. 699, an Annotation entitled: "Power of court, in *habeas corpus* proceedings relating to custody of child, to adjudicate amount which shall be paid for child's support or to modify agreement in that regard." The said case of *Buchanan* v. *Buchanan* enunciated the so-called "Virginia Rule", which may be summarized in this language, as found in a quotation in that opinion:

"It will therefore be seen that the proceeding is confined in very narrow limits, and cannot be extended to the adjudication of claims or money demands and unsettled accounts between the parties; the only jurisdiction of the court was to determine whether the father or aunt had the better right to the child, and decree it to such custody."

In the aforementioned A. L. R. Annotation, cases from other jurisdictions are cited to support the "Virginia Rule", and to those cases cited in the Annotation, might be added *Pugh* v. *Pugh* (W. Va.) 56 S. E. 2d 901, 15 A. L. R. 2d 424, and Adoption of Strauser, 65 Wyo. 98, 196 Pac. 2d 862.

Opposed to the so-called "Virginia Rule" is the "Oregon Rule" enunciated by the Supreme Court of Oregon in the case of *Bartlett* v. *Bartlett,* 175 Ore. 215, 152 Pac. 2d 402, in which it was held that in a *habeas corpus* proceeding between parents for the custody of a child, the court *could* make support awards and enforce them.[1] This language from the opinion gives the gist of the Oregon holding:

"But where, as in this case, wider issues are presented, both in plaintiff's petition and in the defendant's return or answer, we hold that the full inherent power of equity is available, not only to award custody, but to determine collateral matters concerning support at least under circumstances disclosed in this case. It is no great strain upon the rules of pleading to treat the return on the writ as an answer and cross bill. And the conclusion at which we have arrived is little more than a new application of the old rule that equity, taking jurisdiction for one purpose, will retain jurisdiction to do complete justice."

We frankly concede that in *habeas corpus* actions at law where no other issues or problems are presented except the restraint of the body, then *habeas corpus* serves its purpose by determining such restraint. But when we look at our own practice and procedure in *habeas corpus* proceedings brought in equity to determine the custody of children,[2] we see an entirely different situation from the narrow legal proceedings on the law side of the docket.

In the first place, when a child is found within the jurisdiction of the Chancery Court, such Court may inquire into the child's custody by a writ of *habeas corpus*. One such case is *Tucker* v. *Turner,* 195 Ark. 632, 113 S. W. 2d 508. Another such case is *Turner* v. *Dodge,* 212 Ark. 991, 208 S. W. 2d 467. In the last mentioned case, we

---

[1] In 39 C. J. S. 570, the text states: ". . . and it has been held that the Court, on obtaining jurisdiction of the matter, will determine all questions arising in respect of the right to custody, care, and maintenance."

[2] In West's Ark. Digest "Habeas Corpus," § 99, many of such cases are collected.

used this language in regard to the power of the chancery court: "The trial court, therefore, had jurisdiction to determine whether conditions arising subsequent to the rendition of the Alabama decree, warrant a modification of the original order of custody."

Secondly, the Chancery Court has jurisdiction to require a parent to support his child. *McCall* v. *McCall,* 205 Ark. 1123, 172 S. W. 2d 677, is such a case. Another is *McWilliams* v. *Kinney,* 180 Ark. 836, 22 S. W. 2d 1003. So, along with her suit for *habeas corpus,* Cleo Waller could have asked the Chancery Court to require William Waller to support the child; and the two causes of action (that is the prayer for *habeas corpus* and the prayer for support) could have been consolidated and heard at the same time, under the authority of § 27-1304, *et seq.* Ark. Stats.; and in such event, one decree would have sufficed for both the *habeas corpus* and the support.

Thirdly, our statute (§ 27-1155 *et seq.*) allows pleadings to be amended to conform to the evidence. Prior to the hearing of November 15, 1950, William Waller sought the custody of the child and claimed that the mother was an improper person to have the custody and that changed conditions had taken place since the divorce decree rendered by the Ouachita Chancery Court. We do not have before us the evidence on which the November 15, 1950, decree was based, but we do have the decree which awarded the custody to the mother and required the father to support the child. Certainly in indulging the presumption that the absent evidence supported the decree, we must also indulge the presumption that the pleadings in the Chancery Court were treated as amended to conform to the proof that resulted in the decree of November 15, 1950, which the Jefferson Chancery Court had jurisdiction to render.

In the light of all the foregoing, it is clear that we prefer the "Oregon Rule". The Jefferson Chancery Court had jurisdiction to render its decree of November 15, 1950, requiring William Waller to support his child; and since the Court had such jurisdiction and did render such decree, therefore, William Waller's appeal herein

must fail. If he had wanted to challenge the validity of the decree of November 15, 1950, he should have appealed from it, rather than to have violated it and sought to question it collaterally. *Carnes* v. *Butt,* 215 Ark. 549, 221 S. W. 2d 416.

One other matter remains to be considered. While the cause was on appeal to this Court, Cleo Waller moved that William Waller's appeal be dismissed because he had failed to pay the required support money. To keep the matter in *status quo* until we decided the case, William Waller posted a bond in this Court. Against William Waller *and the said bond* we now render judgment for all of the support money payments that were payable at the time of the Chancery decree of March 13, 1951, and all costs of this action. Against William Waller, *but not against the bond,* we now render judgment for support money payments that have matured since the decree of March 13, 1951, and for attorney's fees of $75, in addition to the $25 awarded by the trial court. The question of contempt proceedings for the payment of any of the sums adjudged, is remanded to the Jefferson Chancery Court for consideration.