MEADOWS v. COSTOFF.

4-9843                                          254 S. W. 2d 472

Opinion delivered February 2, 1953.

*Charles Eddy, Bob Bailey* and *Bob Bailey, Jr.,* for appellant.

*Robt. J. White,* for appellee.

ROBINSON, Justice. This appeal involves a divorced couple's title to certain personal property and the possession of real property which is an estate by the entirety.

The appellant, Thelma Costoff Meadows, and appellee, Charles Costoff, were married January 27, 1940, in Chicago, Illinois, when she was 22 years of age and he 45. At that time he had worked for a railroad company for twenty-seven years, owned a half interest in a house and lot in Illinois, and had accumulated about $1,700 in the bank. Subsequent to the marriage, he bought the other half interest in the above mentioned real estate for the consideration of about $1,800, of which $1,000 was paid from his own funds and the balance was borrowed. This property was deeded directly to him. Later he deeded it to a third person, who in turn deeded it back to the litigants herein, in order to create an estate by the entirety.

The record indicates that appellant had occasional employment, and she claims that she used her wages to help pay the balance owed on the real estate and that she also deposited her earnings in a joint savings account in a Chicago bank. In 1945 the couple moved to Arkansas where they had acquired real estate as an estate by the entirety, built a home and purchased about eighteen head of cattle. Appellant maintains she assisted in buying the cattle through her work of picking cotton and also in operating a restaurant.

Early in May, 1949, appellant told her husband that she wanted a divorce. He offered no resistance and a decree was granted her May 20, 1949. On June 15, 1949, she married her present husband, Heartsill Meadows, and moved to Lead, South Dakota. At the time of the divorce there was between seventeen and eighteen hundred dollars in the bank, about twenty head of cattle on

the farm and the furniture in the home. They had a balance due them on the Illinois property which they had sold and which was being paid them at the rate of $42 a month.

In the complaint wherein appellant sought the divorce, it is alleged, "There is no property settlement to be made"; and the decree repeats this language. In September, 1950, she moved back to Arkansas with her present husband and filed this suit, claiming to be the owner of half of the personal property and asked that all of the property, both real and personal, be sold and the proceeds divided between her and Costoff.

Act 340 of 1947, Ark. Stats., 34-1215, authorizes dissolution of estates by the entirety; but in *Jenkins* v. *Jenkins,* 219 Ark. 219, 242 S. W. 2d 124, this court held: "But entirety estates created prior to the enactment of that legislation had given the holders vested rights; and —absent as here—any question of police power, the authorities on constitutional law recognize that the Legislature may not retrospectively destroy vested rights." Since an estate by the entirety in the present case was created prior to the passage of Act 340 of 1947, and the rights have become vested, the court could not dissolve the estate. Therefore, the court had the property's rental value appraised, gave appellee possession and required him to pay to appellant an annual rent in excess of the rental value fixed by the appraisers.

As to the personal property, the decree of the trial court gave appellant half interest in the proceeds of the sale of the Illinois property and rendered judgment against appellee for half of the payments he had received from that source. The chancellor also found that appellant was the owner of one refrigerator, one bedroom suite and one dinette suite, and that appellee was the owner of the other personal property.

We cannot say the chancellor's finding is contrary to the preponderance of the evidence. At the time appellant filed suit for divorce it was stated in the complaint, "There is no property settlement to be made"; and the court found this allegation to be true.

In all probability, when appellant received her divorce she knew that she was going to marry Meadows a short time later. In fact, they were wed in less than thirty days after the decree was granted, and she and Meadows promptly moved to South Dakota. It is not likely that at the time of her divorce, and in the circumstances, she would have left in her former husband's possession undivided personal property in which she owned a half interest. After her arrival in South Dakota she wrote several letters to appellee, and in none of them did she indicate that she owned or claimed any interest in personal property left behind. In fact, she made statements leading to the opposite conclusion. On one occasion she wrote: ''Charles, don't let a certain person take you for your money. She isn't and don't care for you. She's after your money. I left the money and stock for you because I wanted you to be comfortable, and I would feel better this way.'' Again: ''First of all I am returning your money. Thanks, we aren't rich, in fact we are poor, only what we manage for.'' And further: ''As I've told you, Charles, get a woman close to your own age, and then you will thank me for letting you free. You have enough to offer a person that you both can live good on for as long as you live.'' And still further: ''Heartsill and I are starting from the rock bottom, as they say.''

When all of the evidence is considered, we cannot say the decree is contrary to a preponderance thereof.

Affirmed.