BROWN *v.* BROWN.

5-2353 345 S. W. 2d 27

Opinion delivered April 10, 1961.

*John E. Coates,* for appellant.

*Langston & Walker,* for appellee.

ED F. McFADDIN, Associate Justice. This is a case in which neither side is entirely satisfied with the decree rendered by the Chancery Court. The decree covered several points. Mrs. Beadle appeals from some of these; and Mr. Brown cross-appeals from others. We will list

the points and discuss them after giving the facts leading up to the decree here challenged.

Appellant (now Mrs. Beadle) and appellee (Mr. Brown) were married in 1929, had a family of four children, and accumulated considerable property which they held as tenants by the entirety. The Browns separated in 1942, and a divorce decree was rendered by the Pulaski Chancery Court on October 29, 1942, which (a) awarded the wife an absolute divorce; (b) gave each parent part time custody of the children, then from twelve to five years in ages; (c) required the parent having the custody of the children to provide all support during such time; (d) awarded one house to the wife and another house to the husband; (e) awarded the wife $2,775.00 in cash; and (f) contained the following quoted language:

"It is further considered, adjudged and decreed that these parties have real property which stands in the name of Lilly Brown and W. L. Brown as husband and wife and that this property constitutes an estate by the entirety; this property is to remain an estate by the entirety but the rents shall be collected by either, or both of these parties and shall be divided 50/50 between them; . . . It is further adjudged and decreed that these parties have real property in the name or names of their minor children; that these parties shall collect the rents from said property and shall divide same 50/50 between them."

After the divorce decree the parties continued in a friendly business relationship, and prosecuted their joint claim against the Government for compensation for property which the United States had appropriated. In October 1942, from a part of the proceeds received from the Government, the erstwhile spouses purchased some property, with the grantees being named, "W. L. Brown and Lillie G. Brown, his wife." We refer to this as "the Kinney property."

The divorced wife married Mr. Beadle and moved to New Mexico in 1945. The divorced husband also remar-

ried. Mrs. Beadle and Mr. Brown mutually agreed that certain portions of the said decree of October 29, 1942, should be changed; so on December 17, 1945, they jointly obtained a consent decree from the Pulaski Chancery Court which modified the 1942 decree in the following particulars:

(a) The full control of all the entirety property was delivered to W. L. Brown, who, ". . . shall collect the rents, pay the taxes, make all necessary needed repairs, and shall have the right to make improvements and additions to said property if he so desires, and that he shall pay on the 15th day of January, 1946, the sum of $100. and shall pay upon the 15th day of each month thereafter the sum of $100. to Lillie Brown through the registry of Pulaski Chancery Court, which shall be in full payment of Lillie Brown's portion in the income or receipts of said property and this $100. per month shall be paid permanently, or so long as W. L. Brown is in possession and has the use and occupancy of said property."

(b) Mrs. Beadle received $700.00 as her part of the rents from the entirety property collected prior to December 17, 1945.

(c) Mrs. Beadle was to receive the further sum of $2,500.00 from the United States Government, ". . . in full settlement of the said Lillie Brown's interest in and to said judgment."

(d) Mr. W. L. Brown was ". . . given care, custody and control of the said children with the requirement that he maintain and support and educate them without any contribution on the part of the mother, Lillie Brown, outside of that contribution which she is herein and hereby making by agreement to accept $100.00 per month for her interest in the proceeds and earnings of said property in the future; . . ."

No further court proceedings occurred until May 17, 1960, when Mrs. Beadle filed a petition in the Pulaski Chancery Court seeking a modification of the 1945 decree. She claimed:

(1) That W. L. Brown had violated the 1945 decree in failing to support the minor son, W. L. Brown, Jr.; that she had expended $250.00 for such support; and she prayed judgment for that amount and attorney's fee.

(2) That W. L. Brown had obtained a deed to himself as the sole grantee from their son, Larry Leroy Brown (then of full age), covering some property referred to in the 1942 decree as property, the title to which stood in the name of the minor son of the parties; that the 1942 decree recognized this as entirety property, and the deed from Larry Leroy Brown to W. L. Brown should be reformed by the Court to show the title to be held by entirety.

(3) That the Court should order a partition of all of the entirety property or should reapportion the distribution of the rents.

Mr. Brown resisted Mrs. Beadle's petition in all matters and also cross-complained, seeking to have the "Kinney deed" reformed to entirely exclude the name of Mrs. Brown (Beadle) as grantee. With all issues joined, the matters proceeded to trial, which resulted in a decree of the Pulaski Chancery Court of September 27, 1960, which covered several points—as first mentioned—and which we will now list and discuss.

## I.

Mrs. Beadle was given judgment against Mr. Brown for $250.00 as the amount she had expended to support the boy, W. L. Brown, Jr., during the time he was still a minor; and from this judgment Mr. Brown cross-appeals. Without reciting the evidence in detail, we conclude that the Trial Court was correct in this award. In the 1945 decree, Mr. Brown had agreed to support the children during their minority. Mr. Brown breached that agreement, during the last five months of the minority of W. L. Brown, Jr. Our cases hold that the father is under a legal obligation to support his minor children. *McCall*

v. *McCall,* 205 Ark. 1123, 172 S. W. 2d 677; *Worthington* v. *Worthington,* 207 Ark. 185, 179 S. W. 2d 648. Our cases also hold that this obligation[1] can be enforced against the father unless barred by the five year statute of limitations. *Brun* v. *Rembert,* 227 Ark. 241, 297 S. W. 2d 940; *Wilson* v. *Wilson,* 231 Ark. 416, 329 S. W. 2d 557. W. L. Brown, Jr. became 21 years of age on November 7, 1958; so the cause of action was not barred when the petition was filed by Mrs. Beadle on May 17, 1960. The evidence sustains the amount awarded and the Chancery Decree is affirmed on this point.

## II.

The Chancery Court awarded Mrs. Beadle's attorney a fee of $100.00 for his services; and, on appeal, Mrs. Beadle's attorney asked for an additional fee in this Court, since Mr. Brown has cross-appealed from the judgment allowing $100.00 as fee. The Chancery Court was correct in allowing this fee. Mr. Brown had agreed in the 1945 decree to support the children and had failed to carry out that agreement as regards W. L. Brown, Jr. Mrs. Beadle, as the mother of the boy, paid for his support during the last five months of his minority. She was entitled to recover from Mr. Brown for the amount which she paid out, and also she was entitled to a reasonable attorney's fee for being compelled to pursue the matter. We have frequently allowed attorneys' fees to a parent who sues to recover support money payments. *Waller* v. *Waller,* 220 Ark. 19, 245 S. W. 2d 814; *Brun* v. *Rembert,* 227 Ark. 241, 297 S. W. 2d 940; *Wilson* v. *Wilson,* 231 Ark. 416, 329 S. W. 2d 557. Since Mr. Brown cross-appealed the ruling to this Court, Mrs. Beadle has been obliged to have representation; and an additional fee of $100.00 is allowed in this Court. This makes a total of $200.00 adjudged against Mr. Brown. It is understood that this fee is only for that portion of the case that relates to the support money for the child and has no application to the other issues on this appeal.

---

[1] Of interest is the annotation in 69 A.L.R. 2d 203, particularly the section on page 244, *et seq.,* entitled, "Procedural matters."

## III.

As heretofore recited, Mr. Brown obtained a deed in 1954 from his son, Larry Leroy Brown, who had then become of age, and this deed covered property which had been referred to in the 1942 decree as being property that the parties (Mrs. Beadle and Mr. Brown) owned by entirety in the name of their minor children. The Chancery Court reformed the 1954 deed from Larry Leroy Brown to W. L. Brown so as to have Mrs. Beadle and Mr. Brown continue to own the said property as tenants by the entirety; and on this point Mr. Brown has cross-appealed. The 1942 decree recited:

"It is further adjudged and decreed that these parties have real property in the name or names of their minor children; that these parties shall collect the rents from said property and shall divide same 50/50 between them . . ."

The 1945 decree did not divest Mrs. Beadle of her entirety interest in this property. Larry Leroy Brown continued to be the trustee for his mother and father; and when Mr. Brown took the deed from Larry Leroy Brown in 1954, he knew that Larry Leroy Brown was trustee for him and Mrs. Beadle as tenants by the entirety, and that by omitting her name from the deed he could not divest her entirety interest as he attempted.[2] His feeble claim in the present case is that the property was his own and that her name should not have been included in the first instance. The 1942 decree precludes any such claim. The Chancery Court was correct in restoring this property to the entirety estate.

## IV.

In 1944, and after the divorce, Mr. Brown and Mrs. Beadle acquired some property from W. E. Kinney and wife, and the grantees in that deed were, "W. L. Brown and Lillie G. Brown, his wife." The Chancery Court

[2] In *Hayes* v. *Gordon*, 217 Ark. 18, 228 S.W. 2d 464, there was an unsuccessful attempt by a husband to defeat his wife's entirety estate by means of acquiring quitclaim deeds.

allowed Mr. Brown to testify that he personally paid all the consideration for the Kinney deed and that Mrs. Brown's name was included by mistake. On such testimony, the Chancery Court decreed that Mr. Brown was the sole owner of the said Kinney property; and from such decree Mrs. Beadle has appealed. We hold that the Chancery Court was in error in regard to the Kinney property. Mr. and Mrs. Brown own the Kinney property as tenants in common. The deed recited that they owned the property as husband and wife, but since they were divorced the words, "his wife," must be construed to mean, "his former wife." At all events, Mrs. Lilly Brown (now Beadle) was a grantee; and in 1945, when the amendatory decree was entered, nothing was said about the Kinney property being owned other than by Mr. Brown and Mrs. Beadle. When Mr. Brown failed to make this claim in the 1945 decree, he waived it; and we hold that Mr. Brown and Mrs. Beadle own the Kinney property as tenants in common.

## V.

The Chancery Court directed Mr. Brown to forthwith, ". . . procure adequate fire insurance coverage on said entireties to protect the parties' interest in said property . . ."; and, as against that portion of the decree, Mr. Brown has cross-appealed. This has given us considerable concern and is not free of doubt; but we have concluded that, under the peculiar conditions here existing, Mr. Brown should not be required to maintain insurance coverage if he does not so desire.

Under the original 1942 decree, the parties retained equal control of the entirety estate and divided the rents equally. Under that decree, either party could have effected reasonable insurance coverage and charged the premiums against the income; but there is nothing in the record to show that Mrs. Beadle ever had any insurance on the entirety property. If insurance had existed prior to the 1945 decree, then insurance should have been continued; but there is no showing that Mrs. Beadle

carried any insurance on the property when she was herself in equal control of it.

The 1945 decree allows Mr. Brown to ". . . collect the rents, pay the taxes, make all necessary needed repairs, and shall have the right to make improvements and additions to said property if he so desires. . . " There is nothing in the 1945 decree that obligates Mr. Brown to have insurance coverage. If Mrs. Beadle had wanted to have the property insured, she should have made some provision for such insurance before she agreed to the 1945 decree. Mr. Brown is a tenant by entirety and also has the right of exclusive possession under the 1945 decree. His status is thus somewhat similar to that of a life tenant; and we said in[3] *Jackson* v. *Jackson*, 211 Ark. 547, 201 S. W. 2d 218:

"In the absence of anything that requires it in the instrument creating the estate, or of any agreement to that effect on the part of the life tenant, we think that the life tenant is not bound to keep the premises insured for the benefit of the remainderman. Each can insure his own interest, but, in the absence of any stipulation or agreement, neither has any claim upon the proceeds of the other's policy, any more than in the case of Mortgagor and mortgagee, or lessor and lessee, or vendor and vendee. . ."

Mr. Brown testified that the insurance rates were extremely high. It was shown that one building had been destroyed by fire and replaced by a new building. Mr. Brown testified, without contradiction, that he had spent $30,000.00 on improvements and buildings on the property, and certainly the value has increased considerably. In view of all we have recited, we think Mrs. Beadle has waited too long to now assert the claim that Mr. Brown should insure the property for her benefit. As a tenant by the entirety she has an insurable interest, but she cannot now require Mr. Brown to carry insurance for

[3] The Jackson case is cited with approval in *Coleman* v. *Gardner*, 231 Ark. 521, 330 S.W. 2d 954. An informative case on insurance of entirety property is *Conley* v. *Fidelity-Phenix Fire Ins. Co.* (U.S.D.C. Ark.), 102 F. Supp. 474.

her benefit in view of the conditions prior to the 1945 decree and the language contained in that decree. Therefore, that portion of the Chancery Decree, requiring Mr. Brown to carry insurance, is reversed and set aside.

## VI.

Mrs. Beadle asked the Chancery Court to partition the entirety property;* and she appeals from that portion of the decree which refused her the prayed relief. She asserted two grounds for partition. First, she claimed that Mr. Brown was committing waste of the property; but the evidence entirely failed to support her claim of waste. Even if waste would require a partition of entirety property—a point we need not decide—the proffered evidence is insufficient to show waste.

The second ground asserted for partition was the wording of Section 34-1801 Ark. Stats., the germane portion of which, with amendments, reads:

"Any persons having any interest in and desiring a division of land held in joint tenancy, in common, as assigned or unassigned dower, as assigned or unassigned curtesy,[4] or in coparceny, absolutely or subject to the life estate of another, or otherwise, *or under an estate by the entirety where said owners shall have been divorced either prior or subsequent to the passage of this Act, except where the property involved shall be a homestead and occupied by either of said divorced persons,*[5] shall file in the circuit or chancery court a written petition. . ."

Mrs. Beadle concedes that all of the entirety property here involved was acquired prior to the effective date of Act 340 of 1947, and that our holding in *Jenkins*

---

*This concerns all of the realty except the Kinney property discussed in Topic IV *supra*. The Kinney property is held by tenancy in common; and is in no way concerned with the entirety property now being considered in this Topic V.

[4] The language as to dower and courtesy was added by Act No. 324 of 1957 after our holding in *Monroe* v. *Monroe*, 226 Ark. 805, 294 S.W. 2d 338.

[5] Emphasis supplied to show the language contained in Act No. 161 of 1947.

v. *Jenkins,* 219 Ark. 210, 242 S. W. 2d 124, 27 A.L.R. 2d .861, prevents a division of the entirety property under Act No. 340 of 1947, which is now § 34-1215, Ark. Stats. But Mrs. Beadle urges that her right to obtain partition under § 34-1801, Ark. Stats.[6] is entirely distinct from her inability to obtain division of the entirety estate under § 34-1215, Ark. Stats. We are unable to agree with Mrs. Beadle's arguments. Prior to the Act No. 161 of 1947, the section that is now § 34-1801 Ark. Stats. was § 10509 Pope's Digest; and the germane portion of that section read: "Any person desiring a division of land held in joint tenancy, in common or in coparceny shall file in the circuit court a written petition. . ." It was not until 1947 that the Legislature, by Act No. 161 of 1947, first mentioned entirety estates as subject to partition.

The case of *Jenkins* v. *Jenkins, supra,* held that previously vested entirety estates could not be divested by subsequent legislation; and the same reasoning and authorities cited in *Jenkins* v. *Jenkins,*[7] as regards Act No. 340 of 1947, must apply also with equal force to Act No. 161 of 1947. In other words, if an entirety estate created prior to 1947 could not be divided against the wishes of one tenant in the divorce proceedings, the entirety estate could not be partitioned against the wishes of one tenant in a partition proceeding. To hold otherwise would be to allow a dissatisfied spouse, against the objection of the other spouse, to accomplish in two suits what was forbidden in one suit. That is to say, there could first be a divorce, leaving unimpaired an entirety estate created prior to 1947; and then in a subsequent partition suit under Act No. 161 of 1947, one tenant could obtain a partition of the entirety estate against the wishes of the other tenant.

---

[6] Section 34-1801, Ark. Stats. has been amended many times, the last amendment being Act No. 324 of 1957.

[7] In the case of *Jenkins* v. *Jenkins* has been followed in these cases: *Meadows* v. *Costoff,* 221 Ark. 561, 254 S.W. 2d 472; *Young* v. *Young,* 222 Ark. 827, 262 S.W. 2d 914; *Brimson* v. *Brimson,* 227 Ark. 1045, 304 S.W. 2d 935; *Poskey* v. *Poskey,* 228 Ark. 1, 305 S.W. 2d 326; *Anderson* v. *Walker,* 228 Ark. 113, 306 S.W. 2d 318; *Harbour* v. *Harbour,* 229 Ark. 198, 313 S.W. 2d 830; and *Perry* v. *Perry,* 229 Ark. 202, 313 S.W. 2d 851.

We conclude that the Act No. 161 of 1947, just as Act No. 340 of 1947, operates prospectively as regards entirety estates and cannot affect those created prior to the effective date of the Act. Tenants by the entirety can mutually agree to the division or partition of the property; but one tenant by the entirety cannot force partition against the wish of the other tenant if the estate came into existence prior to the effective date of Act No. 161 of 1947. The Chancery Court was correct in refusing partition of the entirety estate.

### CONCLUSION

The Chancery decree is affirmed in part and reversed in part and the cause remanded to reinvest the Chancery Court with jurisdiction to enter a decree in accordance with this opinion. A partition of the Kinney property may be had if desired by either party. This being a Chancery Decree and being affirmed in part and reversed in part, we are privileged to adjudge the costs as seem equitable to us; and so we adjudge the costs of all courts to date against Mr. Brown.