Annie Laurie Thornton EDWARDS, James T. Edwards and Kathy Ann Edwards Fossick *v.* FARM BUREAU MUTUAL INSURANCE COMPANY

91-239                                                     823 S.W.2d 903

Supreme Court of Arkansas
Opinion delivered February 17, 1992
[Rehearing denied March 23, 1992.*]

---

*Brown, J., would grant rehearing.

*Roscopf & Higgins*, by: *Charles B. Roscopf*, for appellants.

*L. David Stubbs*, for appellee.

Tom Glaze, Justice. This case involves the construction of the will of J. P. Thornton, who died on September 2, 1961. Thornton was survived by his widow, Ava West Thornton (now Collins), a daughter from a prior marriage, Annie Laurie Thornton Edwards, and two grandchildren, James Edwards and Kathy Edwards Fossick. Since Thornton's death, the relationship between Ava and Thornton's daughter and grandchildren has been strained.

Thornton's will devised Ava an undivided one-half interest for her life in his plantation situated in Desha County. In following paragraphs of the will, he devised Ava and Annie each a one-third fee simple absolute interest and James and Kathy together a one-third fee simple absolute interest in the plantation, all such fee simple interests being subject to Ava's undivided one-half life interest. Thornton's will language, in making these devises, has become an issue because Ava, who has had exclusive possession of the only dwelling on the plantation, claims all insurance proceeds ($75,000) covering the dwelling after it was destroyed by fire. Ava, undisputably, paid the premiums for this insurance coverage and she was named as the insured. Annie, James and Kathy claim entitlement to two-thirds of the proceeds, stating Ava had a fiduciary relationship with them as co-tenants which required her to protect and secure their common interest.

As a result of this dispute, Farm Bureau Mutual Insurance filed an interpleader action and deposited the insurance proceeds into the court registry. After a bench trial, the trial court held that all proceeds should be paid Ava. Annie, James and Kathy (hereafter appellants) appeal, arguing that the trial court errone-

ously found they were not co-tenants or tenants in common with Ava and that it incorrectly relied on the case of *Jackson v. Jackson*, 211 Ark. 547, 201 S.W.2d 218 (1947).

In the *Jackson* case, the testator devised a life estate in the mansion house to his widow, who by other terms in the will, was free from payment of the taxes and for improvements in maintaining the home place. The widow procured and paid premiums for fire insurance on the house, which was subsequently extensively damaged by fire. The trial court held the insurance proceeds were payable to the trustee named in the testator's will to be held for the use and benefit of future interest owners of the testator's estate. This court reversed, quoting 33 Am. Jur. *Life Estates, Remainders, Etc.* § 332, p. 838, as follows:

> It is clearly the general rule that where a legal life tenant insures the property in his own name and for his own benefit and pays the premiums from his own funds, he is, at least in the absence of a fiduciary relationship between him and the remainderman existing apart from the nature and incidents of the tenancy itself, or of an agreement between him and the remainderman as to which of them shall procure and maintain insurance entitled to the proceeds of the insurance upon a loss; and the fact that the insurance was for the whole value of the fee is not generally regarded as affecting the right of the life tenant to the whole amount of the proceeds.

The *Jackson* court further quoted the following from 31 C.J.S. *Estates* § 46, p. 58:

> It has been stated, as a general rule, that the life tenant is not bound to keep the premises insured for the benefit of the remainderman or reversioner, unless there is an agreement that he shall do so, or a provision to that effect in the instrument creating the estate; but that either may insure for his own benefit, the tenant for life and the remainderman-paying insurance for their respective interests. Ordinarily this is what is done, and it has been held that neither the life tenant nor the remainderman will be benefited by the other's policy.

The court in *Jackson* concluded the testator's widow never

agreed to insure the premises for the benefit of the estate or the owners of future interests in the property, but instead procured the insurance in her own name and for her own benefit. Because the widow had no obligation under the will to insure for the benefit of the remainderman, this court held she was entitled to the insurance proceeds.

Appellants argue *Jackson* is inapplicable because there the will specifically left the widow a life estate in the home place and here Thornton's will failed to mention the dwelling and instead devised Ava an undivided one-half interest for life in the entire plantation.

Appellants argue the present situation is more like the one in *Krickerberg* v. *Hoff*, 201 Ark. 63, 143 S.W.2d 560 (1940). *Krickerberg* involved a partition suit. A will was not in issue. However, the right to partition depended upon whether the parties in *Krickerberg* were co-tenants or tenants in common and thereby entitled to such remedy. In *Krickerberg*, through intestate distribution, the surviving husband, Mr. Krickerberg, received a life estate in one-half of the intestate's property and the remainder vested in the intestate's sister, Mrs. Hoff. At trial, Krickerberg and Hoff agreed Krickerberg had a life estate in an undivided one-half interest in the property and Hoff held fee simple title subject to Krickerberg's interest. From these findings, this court in *Krickerberg* concluded Hoff possessed an undivided one-half interest along with Krickerberg in the entire property and Hoff held the remainder in fee. Apparently, the court determined that because Krickerberg had only an undivided one-half interest in the entire property, the other undivided one-half interest was in Hoff. Reaching this conclusion, the court held Krickerberg and Hoff were co-tenants or tenants in common and therefore held interests that could be partitioned.

In comparing the facts here with those in *Krickerberg*, appellants contend the language in Thornton's will devised a split or one-half life estate in Ava, leaving the remaining one-half life interest to the remaindermen, i.e., Ava and the appellants. That being so, appellants claim a concomitant life interest and right to possession, which satisfies the definition of tenants in common. Appellants asserts that, because they were co-tenants or tenants in common with Ava, Ava had a fiduciary relationship with them

and owed them a legal duty to protect and secure their common interest. *Coffey* v. *Coffey*, 274 Ark. 335, 625 S.W.2d 444 (1981); *Brown* v. *Brown*, 263 Ark. 189, 563 S.W.2d 444 (1978).

In reading the *Jackson* and *Krickerberg* cases, we conclude that both are distinguishable from the facts here. Nonetheless, the *Krickerberg* case does seem to underscore the ambiguous estate of title where only an undivided one-half life interest is devised or otherwise vested in an entire property, and subject to that one-half interest, the remaining fee simple is vested in others (which in the present case includes Ava as well).

■ The intention of Thornton, the testator, is to be gathered from the four corners of his will, considering the language used and giving meaning to all of its provisions when possible to do so. *See In Re Estate of Conover*, 304 Ark. 268, 801 S.W.2d 299 (1990). And, oral testimony is admissible only for the purpose of showing the meaning of the words used in the will when they are ambiguous, and not to show what the testator intended, as distinguished from his expressed words. *Id.*

In reading Thornton's will in light of Ava's and the appellants' arguments and the foregoing rules of construction in mind, we are left with two salient points, one, Thornton made no mention of the dwelling in his will and instead devised Ava an undivided one-half life interest in the entire plantation, and, two, he omitted any reference in his will to the other one-half life interest in his estate or who received it. However, Ava testified that, since her husband's death, she had leased the plantation as farm land. In doing so, she kept one-half of the rents received under the leases and paid one-half of them to the appellants, thus indicating both parties have had a cognizable present possessory interest in the property.[1]

■ We are compelled to conclude that both Ava and appellants have present possessory interest rights in the entire plantation, and that being so, they have, as co-tenants, a fiduciary relationship with one another. Therefore, we reverse and remand this cause with directions that the insurance proceeds be paid to the parties according to their respective interests.

---

[1] We note that the doctrine of merger or its application, if any, was never argued.

354

HOLT, C.J., and BROWN, J., dissent.

ROBERT L. BROWN, Justice, dissenting. The testator and his wife, Ava Thornton (now Collins), lived in the main house of the 1,050-acre plantation in Desha County from 1930 until his death in 1961. Ava Collins continued to live in the main house until it burned in 1989.

The testator left a will in 1961 devising one-half of the plantation to his wife, Ava, and was silent about the life estate in the other one-half. He devised the remainder interest in the plantation in thirds: one-third to Ava; one-third to his daughter, Annie Thornton Edwards; and one-third to his grandchildren, James Edwards and Kathy Fossick. The testator stated that the remainder interests were subject to the life estate in Ava.

Ava insured the house for $75,000 and its contents for $25,000, and from 1980 forward she paid the insurance premiums on the house. Around 1980, the other possessors of the remainder interests expressly declined to participate in payment of the insurance premiums. When the house burned, Ava claimed all of the insurance proceeds, and the circuit court found in her favor. Under these facts, that decision appears entirely correct.

One basic principle that should guide us in the construction of the testamentary language is the testator's intent. The testator clearly wanted Ava to remain in the house as she had for thirty years with him. As we said in *Hastings* v. *Jackson*, 201 Ark. 1005, 1009, 148 S.W.2d 305, 307 (1941): "We think it certain that the testator's first and foremost thought was to provide a home for his elderly wife and to provide her with sufficient means to live in comfort and without financial embarrassment the remainder of her life." That is undoubtedly what the testator wanted in this case — to provide a home for his widow for the balance of her life. No one suggests that the testator intended anything other than this. A more than reasonable conclusion is that the testator's grant of a life estate in one-half of the plantation to Ava included the house.

In light of this salient point, to hold that when the house burned the widow must share the proceeds with other remainder interests flies in the face of reason. If the intent of the testator was for the widow to have a place to live, the testator clearly would

have wished her to insure her interest and then to use the proceeds to rebuild the home in the event of its destruction.

The majority relies on a partition case involving a dispute between the decedent's widower and her sister where no will was involved and where the property was not a house but two city lots. *See Krickerberg* v. *Hoff*, 201 Ark. 63, 143 S.W.2d 560 (1940). The case is readily distinguishable on the facts. In *Krickerberg* the issue was whether the property was subject to partition — not who was entitled to insurance proceeds following destruction of a house. It is true that we concluded that a tenancy-in-common existed between the widower who was a holder of a life estate in one-half of the property and the sister who held the property in fee simple subject to the life estate. But we also quoted with approbation from "Tenants in Common," 7 R.C.L. 815: "It follows that to be a tenant in common one must have such a title as will authorize him to take and hold possession, and if he can never be entitled to the possession, or the control of the property, he cannot be a tenant in common." *Krickerberg*, 201 Ark. at 67, 143 S.W.2d at 562. No one seriously contends that the appellants, during Ava's life, are entitled to possess the house or control it. Indeed, the circuit court found that she had the exclusive right to occupy the house after her husband died.

The majority states that a tenancy-in-common exists and, therefore, Ava had a fiduciary obligation to insure the home for the benefit of the remainder interests. There is no indication that the testator intended a fiduciary relationship regarding the house during his widow's lifetime. To infer a tenancy-in-common under *Krickerberg* and then to make a second inference of fiduciary responsibility for the purpose of divesting the widow of her insurance proceeds is to deny the reality of the situation. A fiduciary obligation should not be imposed on these facts where the result will be that the widow will not have sufficient funds to construct a new home.

The case that should control this matter is *Jackson* v. *Jackson, Trustee*, 211 Ark. 547, 201 S.W.2d 218 (1947). The circuit court cited *Jackson* in its decision and was correct in doing so. In *Jackson*, the facts are similar in many important respects to those in this case. There, we considered a widow's full life estate in a house where the testator's children and one grandchild, held

remainder interests. The widow insured the house which was partially destroyed by fire. After the fire, the trustee of the estate on behalf of the children and grandchildren began repairing the house and incurred costs. The issue at trial was whether the trustee could share in the insurance proceeds. The circuit court found that he could, but we reversed stating:

> There was no obligation resting upon [the widow], in procuring insurance, to protect the interest of the remaindermen under the terms of the will. On the contrary, any fiduciary duty resting on the parties in this respect was owing from the trustee and remaindermen to the life tenant. . . .
>
> There was no agreement on the part of [the widow] to keep the premises insured for the benefit of the estate or the owners of future interests in the property. [The widow] procured the insurance in her own name and for her own benefit. The premium was paid from her own funds under a personal contract of indemnity with the insurance company. The trustee failed to insure the property and was not a party to the insurance contract. . . .
>
> Since [the widow] insured her own interest in the premises at her own expense and was under no obligation under the will to insure for the benefit of the remaindermen, and having made no agreement to do so, she is entitled to the proceeds of her policy of insurance free from the claims of appellees.

*Jackson* v. *Jackson, Trustee*, 211 Ark. at 552-553, 201 S.W.2d at 220-221.

What should decide this case is not only the testator's obvious intent that the one-half life estate should include the house but also the fact that the appellants voluntarily ceased paying insurance premiums on the house about 1980 and failed to pay maintenance costs. Ava Collins had the exclusive right to occupy the house, and she continued to insure it to protect her interest. Under these facts, she is entitled to the insurance proceeds.

I respectfully dissent.

HOLT, C.J., joins.