**In re C.J.U.**

**No. 17833.**

Supreme Court of Utah.

March 9, 1983.

Kent T. Yano, Salt Lake City, for appellant.

David S. Dolowitz, Salt Lake City, for respondent.

DURHAM, Justice:

The respondent, LaCohn Benson Riding, petitioned the court below for an order permitting the adoption without parental consent and an order of adoption of his three minor stepchildren. In his response to Mr. Riding's petition for adoption, James Ray Urry, the natural father of the minor children, requested that the trial court deny Mr. Riding's petition and thereby preserve all of Mr. Urry's parental rights and privileges. After hearing the evidence, the trial court entered an Order Permitting Adoption Without Parental Consent pursuant to U.C.A., 1953, § 78–30–5, and a resulting Order of Adoption. Mr. Urry now appeals that decision. We reverse.

Betty Jean Riding, the present wife of Mr. Riding, and Mr. Urry were previously married to each other and are the natural parents of the three children in question. The marriage of Mrs. Riding and Mr. Urry was terminated by a decree of divorce in 1971. Mrs. Riding subsequently married Mr. Riding, which marriage ended two years later in divorce. Mr. and Mrs. Riding did, however, remarry each other in February of 1977, and have continuously resided together since.

After Mr. Urry and Mrs. Riding's divorce in 1971, the children resided with Mrs. Riding from 1971 to 1975. During that period,

the two oldest children spent from six to eight weeks each summer with Mr. Urry at his home in Tempe, Arizona. In addition, Mr. Urry paid child support and visited the children regularly. In 1975, the Utah State Welfare Agency removed the children from Mrs. Riding's home and, in February of 1976, Mr. Urry was granted custody of his children by the Second District Juvenile Court. While Mr. Urry had custody, he engaged in normal parental activities such as daily supervision, going on camping trips with the children, attending their Little League baseball games, and visiting with their teachers to monitor their progress in school. In August of 1978, based on the mutual agreement of Mr. Urry and Mrs. Riding, the Juvenile Court returned the custody of the children to Mrs. Riding. Mr. Urry did not renew payment of child support because, as found by the trial court in this action, "he was not directed to do so by any court order...."[1]

In 1978, Mr. Urry traveled from his home in Tempe, Arizona, to Salt Lake City to visit his children. In 1979 and 1980, however, because of financial set-backs and business failures, Mr. Urry did not visit the children. In fact, Mr. Urry did not even leave the state of Arizona during that period. However, since August of 1978, Mr. Urry has telephoned each of his children on their birthdays and at Christmas. In addition, Mr. Urry has sent each of them cards and gifts on their birthdays and at Christmas.

Based on these facts, the trial court found that Mr. Urry had abandoned and/or deserted the children, and therefore permitted Mr. Riding to adopt the children without the consent of Mr. Urry pursuant to U.C.A., 1953, § 78–30–5. On appeal, Mr. Urry argues that the evidence fails to meet the requisites of § 78–30–5 because it failed to show (1) that Mr. Urry had both the ability and the duty to support the children and (2) that, without good cause, Mr. Urry

had made only token efforts to maintain a parental relationship with the children. In addition, Mr. Urry also claims that the evidence before the trial court was insufficient to show by clear and convincing evidence that he intended to abandon or desert his children as required by § 78–30–5.

The statutory basis for a judicial determination that a child may be adopted without the consent of a parent who has failed to support or communicate with the child is U.C.A., 1953, § 78–30–5, which reads in pertinent part as follows:

A child may be adopted without the consent of the parent or parents, when the district court ... determines, after notice to such parent or parents ..., that the parent or parents, [1] *having the ability and duty to do so, have not provided support* and [2] *have made no effort or only token effort without good cause to maintain a parental relationship with the child.*

*Id.* (emphasis and numbering added). As demonstrated above, the statute sets forth two conditions that must be satisfied before a child can be adopted without parental consent. Mr. Urry claims that neither condition has been met.

To satisfy the first condition of § 78–30–5, a district court must find that the parent has both the *ability* and the *duty* to provide support and has failed to do so. The question of whether a "duty" exists is a question of law and "this Court is [as] capable of determining the question as was the trial court and we are not bound by its conclusions." *Automotive Manufacturers Warehouse, Inc. v. Service Auto Parts, Inc.,* Utah, 596 P.2d 1033, 1036 (1979) (quoting *Hartman v. Potter,* Utah, 596 P.2d 653, 656 (1979)). *See also Provo City Corp. v. Nielson Scott Co.,* Utah, 603 P.2d 803, 805 (1979). The trial court, in finding that Mr. Urry had a duty to support his children, apparently relied on U.C.A., 1953, § 30–2–9

---

1. In August of 1976, Mr. Urry's obligation to provide support was suspended by a court order because he obtained custody of the children. When custody of the children was returned to Mrs. Riding in August of 1978, Mrs. Riding did not request child support. The Juvenile Court, therefore, referred the matter of child support back to the Third District Court. Apparently, neither party pursued the matter of child support any further.

or U.C.A., 1953, §§ 78–45–1 to –12 (Supp. 1981 & Interim Supp.1982). That reliance is misplaced in this case.

This Court has stated:

> [T]he great weight of authority is that a father's obligation to support his minor children is not changed by a divorce decree which gives custody of the children to the wife, but does not mention their support.

. . . . .

> The contention of the defendant that he is not responsible for the expenses of care given his child may have merited consideration if the decree had actually adjudicated the matter of support of the child by ordering him to pay a specific amount each month or by relieving him of that duty.

*Rees v. Archibald,* 6 Utah 2d 264, 266–67, 311 P.2d 788, 789–90 (1957) (citations omitted).

 As the concurring opinion points out, parents are permanently "duty-bound" to support their children under U.C.A., 1953, §§ 78–45–3 & –4. However, the extent of that duty is not without limitation, particularly in the context of a marriage which has been dissolved by divorce. Once the question of child support has been submitted to a court of competent jurisdiction and a ruling thereon has been obtained, the more general statutory duty of support becomes circumscribed by the more specific duty imposed by the court. A noncustodial parent whose obligation to provide support is being supervised by such a court order cannot be said to have any "duty" to provide support beyond that imposed by the court. In the present case, Mr. Urry's divorce decree required him to pay child support in a specified amount. However, that obligation was suspended by a court order in August of 1976. It has never been reinstated. Thus, we hold that under these circumstances Mr. Urry does not have a "duty" to provide support within the meaning of § 78–30–5.

██ Mr. Urry also argues that the trial court erred in finding that he had the ability to provide support. The trial court's findings state that Mr. Urry's "failure to provide any support . . . was intentional as he had the ability to provide some support . . . but elected not to do so." In the evidentiary hearing, however, the trial court stated that: "[I]t would appear to the Court that there has been no real evidence that the Respondent had the ability to support. . . ." Thus, by the court's own statement there is insufficient evidence in the record to support a conclusion that Mr. Urry had the "ability" to support his children. Therefore, its finding to that effect is erroneous. As a result, the first condition of § 78–30–5—that the parent, "having [both] the *ability* and *duty* to do so, [has] not provided support"—has not been satisfied.

Because we dispose of this case on Mr. Urry's claim that the first condition of § 78–30–5 is not satisfied, we need not address his other point of error regarding a finding of abandonment. Based on the above discussion, we reverse the trial court's Order Permitting Adoption Without Parental Consent and resulting Order of Adoption because the facts fail to satisfy the first condition precedent to the application of § 78–30–5. No costs awarded.

OAKS and HOWE, JJ., concur.

HALL, Chief Justice, concurring in the result:

I concur in the decision of the Court, but I do not subscribe to the conclusion reached that the trial court's reliance upon the statutory duty parents have to support their children was misplaced.

Irrespective of whether parents are under a specific court order to support their children, they remain duty-bound to do so by virtue of the provisions of U.C.A., 1953, §§ 78–45–3 and –4.

STEWART, J., concurs in the concurring opinion of HALL, C.J.