Janie NEEL *v.* Denise C. HARRISON

CA 05-248 220 S.W.3d 251

Court of Appeals of Arkansas
Opinion delivered December 14, 2005

*Legal Aid of Arkansas*, by: *Margaret Reger*, for appellant.

*Osmon & Ethredge, P.A.*, by: *David L. Ethredge*, for appellee.

JOHN B. ROBBINS, Judge. Appellant Janie Neel appeals the entry of a decree by the Baxter County Circuit Court on November 9, 2004, granting the adoption of her eight-year-old daughter Jessica by Jessica's stepmother, appellee Denise Harrison. Appellant contends on appeal that the trial court clearly erred (1) in finding that appellee proved by clear and convincing evidence that appellant's consent to the adoption was not necessary, and (2) in then finding that granting the adoption was in the child's best interest. We hold that the trial court clearly erred as to point one on appeal, which mandates that we reverse. Therefore, we do not reach the second issue on appeal.

The facts leading to the present appeal are not in material dispute. Jessica was born to appellant Janie and her then-husband Aaron on December 15, 1995. Janie and Aaron divorced in 1996, and Janie was granted custody at that time. Aaron married appellee Denise in 1998; they eventually bore a daughter of their own. Janie

also remarried and bore another child within that marriage. On one occasion in 1999, Janie learned that her husband Joe had thrown Jessica against the wall in their home. Janie called for help and filed a police report; Joe was incarcerated for his actions. This led to Janie and Aaron entering into an agreement that Aaron would have custody of Jessica with Janie having alternate weekend visitation. This agreement was approved in an agreed order filed on December 11, 2000, in their Baxter County domestic relations case. There is no dispute that Aaron did not ask for child support, and the agreed order was silent as to child support. The agreed order stated that Joe was not to be around Jessica unless Janie or other family members were present.

Janie's husband Joe was thereafter released from imprisonment and returned to their marital home. Aaron and Denise harbored concerns after Joe was back in the home, so Aaron and Denise allowed Janie sporadic weekend visitation, but only during the daytime when Joe worked so that Jessica would not be exposed to him. Janie admittedly sought a protective order against Joe one time in April 2001 due to him physically attacking her, not the children.

Also in 2001, Aaron and Denise separated. Denise took their daughter and Jessica into her physical custody. By December 2002, Aaron and Denise did not permit Janie to see Jessica due to their belief that Janie had multiple boyfriends with checkered pasts and due to suspicions of drug use. However, Janie gave Jessica presents that December for her birthday. After December 2002, Janie was not allowed to see Jessica, despite phone calls, showing up at Aaron's work and Denise's home, and despite showing up at Jessica's school yard. Aaron and Denise simply did not think that Janie was stable enough to provide a safe and nurturing environment for Jessica. Janie admittedly gave up in her efforts for most of 2003 because she was tired of being criticized for being a bad mother and tired of being denied her child. She said she did not have the money for an attorney to enforce her visitation rights. In October 2003, Janie asked to have Jessica for a visit because Jessica's half-sister was celebrating a birthday; this visit was also not allowed. In November 2003, Janie said she came to Denise and demanded to be allowed her court-ordered weekend visitation, which was denied. In December 2003, Janie attained representation through legal aid and filed a motion in the domestic relations action seeking to modify the December 2000 custody order. In that motion, Janie sought to change custody to her arguing that

Aaron had effectively abandoned Jessica to his estranged wife when they separated in 2001, and furthermore he had denied her access to Jessica.

On January 28, 2004, Denise filed a new action in probate court seeking to adopt Jessica. She appended Aaron's consent to the adoption and alleged that Janie had not seen or supported Jessica for a year. In February 2004, Janie responded by denying that she would consent to the adoption, specifically noting that she was prevented from seeing her daughter, and asking that the domestic relations and adoption proceedings be consolidated. There is no indication that the cases were ever consolidated.

The hearing on the adoption petition was conducted in May 2004, resulting in the order on appeal. At that time, Denise and Aaron were still married but had been separated for three years. Aaron lived apart from Denise and had a girlfriend. The testimony reflected that Janie was not an ideal mother with multiple boyfriends and different fathers for each of her three children. Janie was presently raising her newest baby with a boyfriend who was not the biological father, and she did not have the financial means to provide a home for herself and her children without needing roommates. Janie explained that she worked sixteen hours per week at a minimum wage job, but half of her earnings went toward rent, and the rest went to pay other bills, including old medical bills. Janie said that she was prevented from seeing Jessica no matter how much she protested, and she recalled giving Jessica some gifts in 2002, including a fish tank, a blanket, and some clothing. Janie had also tried to deliver flowers to Jessica at school in December 2003, but Aaron told the school not to accept them. Janie agreed she did not send Aaron or Denise child support money, but she explained that she was not under any court order to do so and had not been specifically asked.

Aaron and Denise admitted worrying about Jessica when she was in Janie's care, particularly with history of the incident with Janie's former husband. Aaron and Denise did not deny that they, either separately or together, did not want Jessica around Janie very much and especially without supervision. They recalled that Janie saw Jessica in July 2002 when Janie bought her a fish and fish tank and a sleeping blanket and then on Jessica's birthday in December 2002, but that was the last time.

On this evidence, the trial judge announced that he found that there was clear and convincing evidence to show that appellant had failed significantly for at least a year to provide for the care

and support of her daughter. The trial judge elaborated that he was not talking about "dollars and cents" but more about the efforts toward keeping the relationship alive. He found the token gifts in 2002 were not enough because failure had to be, not totally, but significantly. He stated that in spite of her ability, meaningful care and support was required but was lacking. Moving to the best interest of the child, the judge chastised Aaron for overt prevention of visitation but nonetheless focused on the best interest as between Denise as the "operative parent" and Janie. The judge specifically found Denise and her witnesses to be credible about lack of contact with the child, noting the gap between July 2002 and December 2002, and then a dramatic gap thereafter. The judge found Janie's life situation and choices to be marginal and sometimes risky. At the end, the judge concluded that Jessica's best interest was to stay with the parent she was and had been living with — Denise. The order granting the adoption was filed in November 2004, and a timely notice of appeal followed.

 "Adoption statutes are strictly construed, and a person who wishes to adopt a child without the consent of the parent must prove that consent is unnecessary by clear and convincing evidence." *In re Adoption of Lybrand*, 329 Ark. 163, 169, 946 S.W.2d 946, 949 (1997). We review adoption proceedings de novo, and the trial court's decision will not be disturbed unless clearly erroneous, giving due regard to the opportunity and superior position of the trial court to determine the credibility of the witnesses. *Vier v. Vier*, 62 Ark. App. 89, 93, 968 S.W.2d 657, 659 (1998). *See also Ray v. Sellers*, 82 Ark. App. 530, 120 S.W.3d 134 (2003). The statute at issue is Ark. Code Ann. § 9-9-207(a)(2) (Repl. 2002), which provides in pertinent part that:

> Consent to adoption is not required of . . . [a] parent of a child in the custody of another, if the parent for a period of *at least one (1) year has failed significantly without justifiable cause* (i) to communicate with the child or (ii) *to provide for the care and support of the child as required by law or judicial decree*[.]
>
> (Emphasis added.)

A year accrued before the petition in January 2004 where non-support could be found. Nor is there an issue of whether appellant paid child support; she did not. What she did provide was meager such

that the trial court did not clearly err in finding her failure to support "significant." It is not required that a parent fail "totally" in these obligations in order to fail "significantly" within the meaning of the statutes. *Pender v. McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979). It denotes a failure that is meaningful or important. *See id.* Therefore, the question on appeal is narrowed to whether appellant's failure was without justifiable cause, which has been interpreted as "intentional" or "willful." *Manuel v. McCorkle*, 24 Ark. App. 92, 749 S.W.2d 341 (1988). We hold that on these unique facts, the trial court clearly erred in finding the petitioner to have presented clear and convincing evidence that appellant's significant failure to provide for the care and support of the child was without justifiable cause.

There is no dispute that the divorce proceedings and orders therein did not command her to pay child support. Aaron admitted that he did not ask for child support when they agreed to a change in custody in December 2000.[1] Janie argues that she relied on the child custody order on that issue, and further, to the extent that she tried to give gifts and see her daughter, she was refused. Appellant cites to *In the Matter of Adoption of Nicole Michelle Glover*, 288 Ark. 59, 702 S.W.2d 12 (1986), in support of her reliance on the order in the divorce case. We find her argument compelling.

The supreme court in *Glover* noted the general rule that it is a parent's duty and obligation, independent of any court order or statute, to support their child. *See also Brown v. Brown*, 233 Ark. 422, 345 S.W.2d 27 (1961); *Watkins v. Dudgeon*, 270 Ark. 516, 606 S.W.2d 78 (Ark. App. 1980). The *Glover* opinion nonetheless affirmed the probate court finding that the mother's consent to the adoption petition had not been proven unnecessary. In that case, appellant mother and father were divorced; the father was ordered to pay child support but the order did not direct appellant to do so; and appellee paternal grandparents had actual custody and were seeking adoption. The probate court therein relied on *In Re C.J.U.*, 660 P.2d 237 (Utah 1983), which held that when parties to a divorce proceeding are under a domestic relations order concerning child support:

---

[1] The dissent repeatedly asserts that Janie was requested to pay support. There was evidence that on a single occasion, *after* the custody order was entered, Aaron asked Janie to assist in paying daycare expenses. Aaron did not, however, seek a modification of the custody order.

> A noncustodial parent whose obligation to provide support is being supervised by such a court order cannot be said to have any "duty" to provide beyond that imposed by the court.

*Glover*, 288 Ark. at 62. The *Glover* opinion upheld the finding that the mother's consent was necessary despite her having contributed no support because of these special circumstances. *See also Loveless v. May*, 278 Ark. 127, 644 S.W.2d 261 (1983)(consent to adoption necessary where natural mother was led to believe, in view of previous court order and advice given her, that she was not expected to furnish support for her child, who was in the custody of relatives); *Tisdale v. Seavey*, 286 Ark. 222, 691 S.W.2d 144 (1985)(consent was necessary in petition to adopt by mother and stepfather where Ohio divorce decree ruled that natural father was no longer required to pay child support to natural mother). *Compare Dinkins v. Arkansas Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001) (holding that in a termination of parental rights case there was no "willful" failure to provide support; DHS conceded that it never requested contributions of material support from Dinkins, nor did the trial court ever order her to pay child support).

We emphasize our recognition that as a general rule, all parents have a duty to provide their children with support. The proof herein of failure to support "without justification" was diluted significantly by Aaron and Denise's refusal to accept gifts and refusal to permit contact. The trial court specifically noted its displeasure with the overt prevention of contact between appellant and her daughter. Notwithstanding this statement, the trial court then found that appellant's consent to adoption was unnecessary because she had failed to support her child, stating:

> When the Court talks about support, the Court talks about that as a parent to a child. The Court doesn't talk in terms of dollars and cents. The Court talks in terms of making sure that the nature of the relationship is kept alive by cards or homemade gifts or presents or remembrance at birthdays or Christmas or special events.

In performing our appellate review, we are guided by our supreme court's declaration in *Glover, supra,* that:

> [T]he law is solicitous toward maintaining the integrity of the natural relation of parent and child; and in adversary proceedings in adoption, where the absolute severance of that relation is sought,

without the consent and against the protest of the parent, the inclination of the courts, as the law contemplates it should be, is in favor of maintaining the natural relation. . . . [I]f the statute was open to construction and interpretation it should be construed in support of the right of the natural parent.

We hold that the petitioner seeking adoption, appellee herein, did not prove by clear and convincing evidence that appellant's significant failure for at least one year to provide for the care and support of her child was "without justification." The trial judge's conclusion to the contrary was clearly erroneous. This holding renders the second issue on appeal moot.

Reversed.

HART, GLOVER, VAUGHT, and ROAF, JJ., agree.

GLADWIN, GRIFFEN, CRABTREE, and BAKER, JJ., dissent.

KAREN R. BAKER, Judge, dissenting. As noted by the majority, the question on appeal is whether appellant's failure to provide support was without justifiable cause. While the majority recognizes the obligation to support one's child exists in the absence of a support order, they go on to find such a failure to provide support justifiable in this case due to the absence of an order directing the appellant to support her child. I cannot agree.

The child custody order at issue is not contained in the record and we are left to speculate as to what it contained. The majority concludes, based on the testimony, that the order was silent in regard to support. The majority notes specifically that Aaron Harrison testified that he did not ask for child support when he and Janie agreed to change custody in December 2000. The problem with this analysis is twofold.

First, because the custody order is absent from the record, it is impossible for this court to know what it contained. In addition, even if the majority were correct in their assumption that the custody order is silent at to child support, its silence would not relieve appellant of her support obligation. A parent cannot simply turn a child's care and support over to another and thereby be excused from the duty of providing support for the child, a duty exists whether ordered or not. *In re Adoption of Glover*, 288 Ark. 59, 702 S.W.2d 12 (1986) (citing *Pender v. McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979)).

Second, the majority emphasizes Aaron's admission that he did not ask for child support at the time the change of custody was granted, yet fails to mention that both appellant and Aaron testified that he subsequently asked her for support.

Appellant testified that she had provided no support for over a year and that it had been a year and a half since she had seen J.H. She admitted that in 2003 she made probably $550.00 every two weeks. Additionally, she stated that Aaron had asked her to help pay for daycare around Easter 2003, and went on to say that she "did not feel [she] should have had to pay child support to someone for not letting [her] do what they are supposed to let [her] do."

The majority relies on *Glover*, in holding that the mother's consent was necessary because her failure to support J.H. was justifiable. In *Glover*, the father was ordered to pay child support and the original divorce complaint provided that the caretakers should remain responsible for the support and maintenance of the child while they had custody. Here, if the majority is correct that the custody order was silent as to support, no one was ordered to support J.H., nor were there other custodians responsible for her support and maintenance. In fact, there is no evidence that in granting Aaron Harrison's ex parte petition to change custody the trial court even considered the issue of child support. Certainly there is no implication that appellant was relieved by the court of her duty to support her child. In *Lovelace v. May*, 278 Ark. 127, 644 S.W.2d 261 (1983), the appellant could not find employment, had no funds, and there was evidence of employment for only three months. In this case, appellant admitted to having employment and testified in regard to her income. In *Tidsdale v. Seavey*, 286 Ark. 222, 691 S.W.2d 144 (1985), the parents obligation of support was terminated by court order. Finally, in *Dinkins v. Arkansas Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001), contributions for support were never requested. Here, appellant admitted that a request for support, specifically for childcare, was made.

The trial court after hearing the testimony in this case found that appellant had for a period in excess of one year failed to support her child without justifiable cause. Based on the record before us this finding is not in error; yet the majority, relying on an order that is not before us, reverses the trial court and holds that appellant's undisputed failure to support her child was justified.

The majority's holding abandons the longstanding principle that a parent has a duty to provide support for her child, whether or not she is ordered to do so by a court. Because the majority's decision contravenes this basic principle, I must respectfully dissent.

GLADWIN, GRIFFEN, and CRABTREE, JJ., join.