PHILLIP T. WHITEAKER, Judge
In this one-brief appeal, appellant Rachel Cooper challenges the order of the Woodruff County Circuit Court granting appellee Chris Merwether primary custody of their daughter, A.M. Her sole argument on appeal is that the circuit court erred in finding that placing custody with Merwether was in A.M.'s best interest. We disagree and affirm.
*396 Cooper and Merwether are the parents of A.M., who was born in September 2014. Although Cooper and Merwether were never married, they lived together following A.M.'s birth until sometime the following spring.[1] After their separation, the parties agreed that each parent would keep A.M. for a week at a time, and neither would pay child support. In April 2016, Merwether filed a paternity complaint and petition for custody of A.M. Cooper answered and filed a counterclaim asking that custody be placed with her.[2]
The circuit court held a hearing on the complaint and counterclaim in February 2017. The parties stipulated to paternity, and the court heard evidence only on the issue of custody. Merwether presented evidence about his education, work history, and home life, and he related his concerns about Cooper's home life. One of those concerns involved a period of time in which Cooper resided in a camper trailer, which Merwether felt was an inappropriate environment for A.M. Another concern involved the safety of Cooper's current residence due to crime in the area. He also expressed his worries about her parenting skills, specifically referencing episodes of severe diaper rash that went untreated by Cooper, and he complained about the cleanliness of Cooper's home and A.M.'s hygiene while in Cooper's care. He further described his frustration with her refusal to cooperate in shared parenting, mentioning specific instances when she refused to return A.M. at the appointed time.
Cooper likewise presented evidence of her circumstances. She explained that she was a stay-at-home mother and was able to do so because of her husband's income. She admitted that for a brief time, she and her husband lived in a camper trailer because of the failure of the heater at their rented apartment. She described her current apartment accommodations and noted that A.M. had her own bedroom, as opposed to Merwether's home, where A.M. and Merwether shared a room. Cooper conceded that there recently had been a shooting at the apartment complex, but she denied that it was an unsafe environment for A.M. She expressed her concerns about Merwether's being the primary custodian, explaining that he was too reliant on his mother for care and assistance of A.M.; here, she complained that his mother had serious health problems that required a significant amount of narcotic medications. She also objected to the fact that Merwether lived in a three-bedroom home with his mother, his mother's boyfriend, and his adult brother.
After the hearing, the circuit court entered an order in which it summarized the testimony of the parties and witnesses. In pertinent part, the court wrote as follows:
[Merwether and Cooper] lived together for about seven months after [the] minor child, A.M., was born. At that time, [Merwether] worked and paid [the] bills of the household. [Cooper] did not work during this period of cohabitation. The parties separated around September 2015 and agreed to a child visitation schedule. [Merwether] testified that he kept the child for a period of 71 days without contact from [Cooper] because of living arrangement problems encountered by [Cooper]. [Merwether] testified that 71 days passed with no contact from [Cooper] about minor child, A.M. [Cooper] disputes the length of time absent, as well as witnesses who testified on *397 behalf of [Cooper].[3 ] The court carefully observed and listened to the testimony on this issue, as well as all other testimony. The Court believed [Merwether] and considers the actions of [Cooper] in being absent from her child at a young age for that extensive period of time, very detrimental conduct concerning the health, welfare and safety of a minor child.
....
Each party presently maintains an appropriate home for the minor child, although the mother lives in an apartment complex, which apparently has some history of violent crime. The child has assistance in care while in the custody of the father from her paternal grandmother. The mother of the child has apparently not worked since prior to the child's birth. Her present husband appears to be an appropriate stepparent and appears to have the child's best interests at heart.
The father presented significant evidence indicating that the mother had frequently refused to return the child when agreed or otherwise communicate with the other parent regarding the minor child. This same evidence indicated a willingness on the father's part to accommodate the mother's visitation with the minor child.
Based upon all of the foregoing facts, evidence, and credibility of [Cooper] regarding her period of absence from her young child, the Court finds that primary physical custody of the minor child is appropriate with the father and awards same to him as plaintiff. [Cooper] shall have visitation pursuant to the standard Schedule A visitation of the 1st Judicial District, a copy of which shall be attached to this Order.
From this order, Cooper brings the instant appeal.
Cooper appeals an initial paternity and custody action. Arkansas Code Annotated section 9-10-113(a) (Repl. 2015) provides that when a child is born to an unmarried woman, legal custody of that child shall be in the woman giving birth to the child until the child reaches eighteen years of age unless a court of competent jurisdiction enters an order placing the child in the custody of another party. As such, Cooper was the statutory custodian of A.M. at her birth. Under the paternity statute, a biological father, like Merwether here, may petition the circuit court in the county where the child resides for custody of the child. Ark. Code Ann. § 9-10-113(b). The circuit court may then award custody to the biological father on a showing of three factors: (1) the father is a fit parent to raise the child; (2) he has assumed his responsibilities toward the child providing care, supervision, protection, and financial support for the child; and (3) it is in the best interest of the child to award custody to the biological father. Ark. Code Ann. § 9-10-113(c)(1)-(3). On appeal in this case, Cooper argues only that the circuit court erred in finding that it was in A.M.'s best interest for custody to be awarded to Merwether.
Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. Li v. Ding , 2017 Ark. App. 244, 519 S.W.3d 738. This court has further made clear that it considers the evidence de novo but will not reverse unless the circuit court's findings are clearly erroneous *398 or clearly against the preponderance of the evidence. Faulkner v. Faulkner , 2013 Ark. App. 277, 2013 WL 1857687 ; Delgado v. Delgado , 2012 Ark. App. 100, 389 S.W.3d 52. Findings are clearly against the preponderance of the evidence when the court is left with an irrefutable and express belief that a mistake has occurred. Faulkner, supra.
Importantly, this court gives deference to the superior position of the circuit court to view and judge the credibility of the witnesses in these matters. Id. Deference to the circuit court is even greater in cases involving child custody, as a heavier burden is placed on the circuit court to "utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the child." Delgado, supra. Child-custody cases are unique because there are no other cases in which the superior position of the circuit court to assess witness credibility carries as much weight. Id.
Cooper raises several subpoints in her best-interest argument, asserting that (1) she is a fit and proper mother, (2) her home and financial resources would better serve the best interest of A.M., and (3) Merwether's "combative nature" in visitation did not warrant custody being placed with him. Finally, she argues that the circuit court's reliance on a "short absence" from A.M. was in error because that absence was justifiable.
As to Cooper's arguments that she is a fit and proper parent with appropriate housing and financial resources, the circuit court made no finding that she was not. Indeed, as set out in the circuit court's order quoted above, it specifically found that she maintained a proper home and that her husband was a good stepparent who had A.M.'s best interest at heart. The court did find that Cooper had not worked since before A.M. was born, but the order made no finding or comment that this fact necessarily militated against Cooper's having custody. Cooper essentially asks us to weigh the evidence presented at trial differently than the circuit court did. That, however, is not a practice in which this court will engage. See Wilhelm v. Wilhelm , 2018 Ark. App. 47, at 6, 539 S.W.3d 619, 624.
Her next argument suffers from the same infirmity. She maintains that Merwether exhibited "combative conduct" with respect to visitation and was "unconcerned about inconvenience" to Cooper. Here, she points to a series of text messages that she and Merwether exchanged about Christmas visitation in 2016 and asserts that they show she was the reasonable party when it came to arranging holiday visitation. The circuit court, however, read those messages and interpreted them to indicate that Cooper was the recalcitrant party. The court also made a specific finding, based on the evidence, that Cooper was uncooperative about returning A.M. to Merwether and in communicating with him, while Merwether showed a willingness to accommodate Cooper's interactions with the child. Cooper again asks us to reweigh the evidence and the credibility of the testimony, which we will not do. Id.
Finally, Cooper argues that the circuit court placed undue importance on the period of time during which she did not see A.M. At trial, Merwether testified that Cooper did not see A.M. at all for a period of seventy-one days in the fall of 2015.[4] His testimony about the length of the separation was corroborated by the testimony of his mother, Cindy Merwether. Cooper denied having gone for a span of seventy-one days without seeing A.M.
*399 She admitted, however, that she let Merwether keep A.M. for three consecutive weeks, explaining that this was an agreed-on extended visitation because the apartment she was renting had no heat, and she was temporarily living in a camper trailer as a result.
Cooper asserts that the court's emphasis on this factor was erroneous because the court did not consider her reasons for being absent.[5] The court did, however, acknowledge Cooper's insistence that she "did not disappear for seventy-one days." It simply found her testimony to lack credibility and stated that it found her absence for an "extensive period of time" to be detrimental to A.M.'s best interest. That the court did not enunciate more specific reasoning does not mean it did not consider Cooper's testimony about her circumstances. See, e.g. , Woods v. Woods , 2013 Ark. App. 448, at 7, 2013 WL 4558126 (noting that the mere fact that the circuit court did not make specific findings about statutory factors in a custody case did not mean that the court gave no consideration to those factors). This credibility determination lay squarely with the circuit court, and we will not disturb it on appeal. See Glisson v. Glisson , 2018 Ark. App. 21, 538 S.W.3d 864.
On our de novo review, we hold that the circuit court did not clearly err in finding that placing custody of A.M. with Merwether was in the child's best interest.
Affirmed.
Hixson and Murphy, JJ., agree.

Merwether's paternity complaint asserted that they cohabited until April or May of 2015; Cooper alleged in her counterclaim that they separated in February 2015.

Cooper did not contest paternity.

Cooper's friend Whitney Humes testified that she saw Cooper and A.M. three or four times a week, and there had never been a two-and-a-half-month period that she did not see A.M.

Although the parties were clear in their testimony that the alleged lapse of time was seventy-one days, Cooper's brief repeatedly refers to a period of "eighty-one" days.

In this portion of her brief, Cooper cites numerous inapposite cases and statutes, most of which deal with adoptions in which the court must determine whether a natural parent's consent is required. See, e.g. , Ark. Code Ann. § 9-9-207 (Repl. 2015); In re Adoption of Glover , 288 Ark. 59, 702 S.W.2d 12 (1986) ; Neel v. Harrison , 93 Ark. App. 424, 220 S.W.3d 251 (2005) ; Taylor v. Hill , 10 Ark. App. 45, 661 S.W.2d 412 (1983).