Cite as 2024 Ark. App. 104

# ARKANSAS COURT OF APPEALS

DIVISIONS I, II and IV
No. CV-22-426

|  |  |  |
|---|---|---|
| | | **Opinion Delivered** February 14, 2024 |
| MATTHEW FORREST | | |
| | **APPELLANT** | APPEAL FROM THE POPE COUNTY CIRCUIT COURT |
| | | [NO. 58PR-20-268] |
| V. | | |
| | | HONORABLE DENNIS CHARLES SUTTERFIELD, JUDGE |
| BUCK FLEMING | | |
| | **APPELLEE** | REVERSED |

## STEPHANIE POTTER BARRETT, Judge

Appellant Matthew Forrest appeals the Pope County Circuit Court's determination that his consent was not required for his son and daughter to be adopted by appellee, Buck Fleming, their stepfather. On appeal, Forrest argues that the circuit court erred (1) in finding that he unjustifiably failed to communicate with his children when the children's mother, Allyssa Fleming, thwarted his attempts at visitation; and (2) in finding that he unjustifiably failed to support his children when there was no order requiring him to support them, and he stopped supporting the children only when Allyssa refused his attempts to see them and speak to them on the phone. We hold that while Forrest did not support his children and did not communicate with them, he had justifiable cause for doing so; therefore, his consent was required for the adoption, and because Matthew did not give his consent, we reverse the adoption.

This case has a complicated history. It is necessary to discuss the paternity action that set all the wheels in motion in this case; the disposition of that case is set forth in a companion case handed down today as well. *Forrest v. Thomlinson*, 2024 Ark. App. 102, ___ S.W.3d ___. Matthew Forrest and Allyssa Thomlinson (Fleming) were never married but had two children, son MC1 (DOB 1/5/07) and daughter MC2 (DOB 9/4/08). The parties were in an on-again, off-again relationship until 2017. On December 17, 2017, Allyssa obtained a ten-year order of protection against Matthew; although the order forbade Matthew from going to Allyssa's residence and place of employment, it allowed him to attend the children's sporting events and other various functions so long as he had no direct contact with Allyssa. But on January 4, 2018, Allyssa obtained an ex parte order of protection for the children against Matthew, which prohibited Matthew from initiating any contact with the children, including, but not limited to, physical presence and telephonic, electronic, oral, written, visual, or video communication. Both of these orders of protection were signed by the same circuit judge.

On February 22, 2018, Allyssa filed a complaint to establish Matthew's paternity of MC1 and MC2; this matter was also assigned to the same circuit judge. She alleged that because the parties were never married, she was, as a matter of law, the custodian of the parties' two children, and she requested that Matthew be ordered to pay child support, including retroactive support to the birth of each child. Matthew answered the complaint, asserting that he is the children's father and that he should be ordered to pay child support, although he denied that he should pay child support retroactive to the birth of the children

2

because the parties had been residing together for the majority of the children's lives, and he had contributed to their support. Matthew also filed a counterclaim for visitation on March 21, 2018, alleging that he is the children's father; alleging that Allyssa had denied him visitation with the children since January 1, 2018; and requesting an order allowing him temporary visitation pending the final order of the court. In Allyssa's answer, she asserted that any visitation awarded to Matthew should be supervised. Matthew amended his counterclaim for visitation on December 2, 2019, to add that Allyssa had denied him not only visitation since January 1, 2018, but also all phone contact with the children since June 2018, and had denied contact with his mother since June 2019; he also asked that the circuit court set temporary visitation pending any final orders. Matthew filed a second amended counterclaim for visitation on July 24, 2020.

Allyssa's attorney was allowed to withdraw from the case, and on September 3, her new counsel moved for a continuance from the September 28, setting due to a conflict on her part as well as her assertion that she needed more time to prepare. This motion was granted, over Matthew's objection, and the case was continued to November 2. Allyssa attempted to have the case continued a second time in a motion filed September 21; that request was denied.

On September 23, 2020, in a separate case that forms the basis of this appeal, Allyssa and Buck filed a verified petition for adoption requesting that Buck be allowed to adopt MC1 and MC2. They asserted Matthew's consent was not required because he had failed

3

to communicate or to provide care and support for the children for one year or more without substantial justification; Matthew denied that assertion.

In a letter dated September 28 and filed with the court, the Flemings' counsel noted that, while Matthew objected to a continuance because Allyssa had not allowed him to exercise visitation with the children since January 2018, there had been no order entered by the court establishing paternity or visitation in this matter, so Allyssa had not refused or denied any ordered visitation. Counsel further requested that the children be evaluated by their counselors prior to a visitation ruling because there was a current order of protection against Matthew entered on January 4, 2018, on behalf of the children. Counsel noted that she was unable to determine the final disposition of the order of protection since an order of continuance was entered, and the matter was never reset for a final hearing. Last, counsel noted in her letter that she had filed a petition for adoption on behalf of the Flemings, and she would be requesting a transfer of that case to the same circuit judge since she believed both cases should be heard at the same time. The circuit judge agreed to also hear the adoption petition with the paternity action. A notice of hearing was filed on November 3, stating that by agreement of the parties, a hearing had been set for January 21, 2021.

On January 8, 2021, Allyssa filed another motion for continuance, stating that the children's counselor had reported abuse allegations to the Arkansas Department of Human Services, and there was now an ongoing pending DHS matter. Matthew objected, but the case was continued until May 11, and then continued from that date until July 14.

Matthew filed a third amended counterclaim for visitation on June 11, alleging that Allyssa had admitted in her paternity complaint that he is the father of the minor children; that she had continued to deny him visitation with the children since January 1, 2018; and that he had been denied all telephone contact with the children since 2018. He requested to be awarded joint custody of their children. In her answer, Alyssa asserted that no visitation had been ordered and was specifically denied by the circuit court at the last hearing.

Matthew moved for a continuance on July 1 due to a pending motion in the adoption case for sanctions against the Flemings for failure to answer discovery, and he could not prepare for trial without the information requested. The circuit court granted the motion and reset the case for September 29.

On September 28, the Flemings' counsel moved for a continuance due to counsel having been in an automobile accident on September 27. Over Matthew's objection, the circuit court granted the motion, and the matter was reset for December 17.

On December 14, the circuit court entered an order in the paternity action, finding that Matthew is the biological father of the children. However, the circuit court specifically declined to rule on the issues of child support and visitation.

On December 17, the day of the adoption hearing, the Flemings' counsel filed waivers and consents to adoption signed by the children. After the adoption hearing, the circuit court instructed both parties to draft proposed orders, including findings of fact and conclusions of law. The circuit court notified the parties in a notice of decision filed on January 31, 2022, that it was granting the adoption; it ordered the Flemings' counsel to draft

5

a final order of adoption and a dismissal of the paternity case on the basis that Matthew's parental rights were terminated by the adoption.

On February 2, 2022, an order was entered, dismissing the paternity action on the basis that Matthew's parental rights had been terminated in the adoption case. This order was set aside on March 1 as being prematurely entered because the adoption decree had not yet been entered, so Matthew's parental rights had not yet been terminated by the adoption.

The final decree of adoption was entered on March 28, 2022. In it, the circuit court found that Matthew's consent was not required because he had not had contact with the minor children for a year or more and had not provided support. The order specified the period of noncommunication and nonsupport was from no later than August 2018 to September 2020. The circuit court found that the minor children had been in Allyssa's sole custody since their birth, although the parties both testified that they did reside with each other off and on for periods of time. The order referred to Matthew's testimony that he recognized that the order of protection against him regarding Allyssa did not prohibit access to the children and that he could attend their activities so long as he had no direct contact with Alyssa, but he did not. Matthew also acknowledged that he could have phone contact with the children, but he stopped trying after a few months, and he had not called in 2019, 2020, or 2021. The order also provided that Matthew admitted that he had not made any support payments from June 2018 to June 2021.

A second order dismissing the paternity action was entered on April 1, 2022; the basis for dismissal was that Matthew's parental rights had been terminated on the grant of the

6

adoption. Matthew timely filed his notices of appeal designating the entire record in both cases.

With regard to the issue of whether Matthew's consent was required, Allyssa testified at the adoption hearing that the restraining order entered in December 2017 pertained to her; it did not restrain Matthew from having contact with the children. She admitted that Matthew did have contact with the children on New Year's Eve 2017, but Matthew got mad when he saw Buck's name on MC2's phone, he began yelling at MC2, and Allyssa went to pick the children up from Matthew's house. Allyssa testified that she made the decision at that time to not let the children go back to Matthew's house without a court order requiring her to do so because they would be unsafe, although she admitted that Matthew had never physically harmed the children. She testified that Matthew was allowed to attend the children's activities so long as he had no direct contact with her, but he did not do that. She said that Matthew was allowed to call the children on Wednesdays and Sundays; while he did that for a little while, he eventually stopped calling. Allyssa said that his phone contact was sporadic at best in 2018, and there was no phone contact from 2019 forward; she testified that her phone records did not show that Matthew had tried to call the children at all. Allyssa denied that she attempted to thwart Matthew's ability to attend his children's activities or to have telephone visitation with them. As for any amount of child support, Allyssa testified that Matthew had given her money for the children on maybe five occasions and that the last time he had given her money had been in 2016.

Matthew testified that after the December 2017 restraining order was entered, he knew that he was allowed to attend the children's activities as long as he did not talk to Allyssa; he admitted that he had not attended any of the children's events. He explained that he did not go because he believed it was unhealthy for the children since Allyssa would "blow everything out of proportion." However, he said that after the 2017 New Year's Eve incident, Allyssa took the children and did not let him see them again. As for phone visitation, Matthew testified that when phone contact was reestablished in June 2018, he talked to the children a couple of times over the first few months, but then no one would answer his calls; he said he stopped calling around September 2018 because he could not get an answer, and he attempted phone calls only sporadically after that; however, he admitted that he did not think he had called in 2019, 2020, or 2021 because Allyssa quit answering, and he was court ordered to not contact her. He said that before the order of protection was entered, he had never filed a petition for paternity or sought to pay child support because there was no need to do so. As for the issue of support, Matthew admitted that he had paid no support since January 2018 but that he had stood ready and willing to do so the entire time. He said that he gave his mother money in June 2018 to give to Allyssa for support because Allyssa was still allowing his mother to see the children at that time but that he had not paid any support after then. Matthew said that the paternity case had been pending since 2018, and it was still pending when the adoption petition was filed in 2020. He said that he had admitted paternity of the children from day one, never denying they were his

8

children; he also never denied that he owed child support, and he had always been willing to provide support for the children.

Adoption proceedings are reviewed de novo, and a circuit court's decision will not be disturbed unless clearly erroneous, giving due regard to the opportunity and superior position of that court to determine the credibility of the witnesses. *Hughes v. Elliott*, 2021 Ark. App. 486. A finding is clearly erroneous when, despite evidence to support it, the reviewing court is left with the firm conviction that a mistake has been committed. *Id.*

Generally, consent to adoption is required by the father of the minor child to be adopted. Ark. Code Ann. § 9-9-206(a)(2) (Repl. 2020). However, Arkansas Code Annotated section 9-9-207(a)(2) (Repl. 2020) provides that consent to adoption is not required of "a parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree." Adoption statues are strictly construed, and a person wishing to adopt a child without the consent of the parent must prove consent is unnecessary by clear and convincing evidence. *In re Adoption of Minor Child*, 2022 Ark. App. 408, 653 S.W.3d 544. Justifiable cause means the significant failure must be willful in the sense of being voluntary and intentional; it must appear the parent acted arbitrarily and without just cause or adequate excuse. *Id.* "Failed significantly" does not mean "failed totally." *French v. Hoelzeman*, 2020 Ark. App. 543, at 2, 614 S.W.3d 850, 852. If the petitioner meets the initial burden, then the nonconsenting parent must show some justifiable reason for the failures; the ultimate burden of proof,

however, remains with the petitioner. *Id.* When faced with having to decide whether a parent has presented justifiable cause, courts must assess and weigh the parent's reasons why he or she failed to communicate with or support the children. *Id.*

Here, the circuit court had Allyssa's petition to establish paternity, Matthew's admission of paternity and request for an order setting child support, and Matthew's counterclaim for visitation pending before it since February to March 2018. But the circuit court simply refused to rule on these claims until December 14, 2021, four days before the adoption hearing, when it found that Matthew is the biological father of the children; yet, it still refused to set child support or visitation. Matthew obviously relied on the judicial process to resolve the dispute between Allyssa and himself on the issue of child support and visitation given his admission of paternity and his request that the circuit court set child support and visitation. Inexplicably, the circuit court refused to act for almost four years. The circuit court's inaction has permanently deprived the parent of the relationship with his children and the children of their relationship with their father.

In *Martini v. Price*, 2016 Ark. 472, 507 S.W.3d 486, our supreme court held that it was reasonable for Mr. Martini to be concerned that contact or attempted contact with an existing protective order against him in favor of his ex-wife, which did not include his child, could constitute a violation of that protective order, which would expose him to a period of incarceration. In the present case, not only was there a protective order against Matthew for Allyssa, Allyssa also obtained an ex parte order of protection on January 4, 2018, on behalf of the children against Matthew, prohibiting Matthew from initiating any contact with the

10

children, including, but not limited to, physical presence and telephonic, electronic, oral, written, visual, or video communication. Matthew was also prohibited from using a third party to contact the children except by legal counsel or as authorized by law or court order. The January 4, 2018, file-marked copy of the ex parte order of protection is all that is contained in the record regarding this order of protection. It appears from the record that the ex parte order of protection against Matthew for the children was in effect throughout the case, which leaves Matthew with a valid reason for not contacting his children by phone and for not attending their school activities as allowed in Allyssa's December 2017 order of protection—he was prohibited from having any contact whatsoever with the children under the January 4, 2018, order. We hold that Matthew had justifiable cause for not communicating with his children during the time period in question.

The circuit court also found that Matthew had failed to provide support for his children. It is a general rule that a parent has a duty and an obligation, independent of any court order or statute, to support his or her child. *In re Adoption of Glover*, 288 Ark. 59, 702 S.W.2d 12 (1986). Matthew cites *Neel v. Harrison*, 93 Ark. App. 424, 220 S.W.3d 251 (2005), for the proposition that he was under no obligation to pay child support because none had been ordered. In *Neel*, the parties were divorced, and appellant Janie Neel was granted custody of the parties' daughter, Jessica. However, Janie's new husband abused Jessica, and Janie agreed to allow her ex-husband, Aaron (Jessica's father), and his new wife, Denise, to have custody of Jessica with Janie receiving alternate weekend visitation. This agreement was approved by the circuit court. Aaron did not request child support, and none was awarded

11

by the circuit court. When Denise attempted to use the fact that Janie had not paid child support in order to be able to adopt Jessica without Janie's consent, the circuit court allowed it, but this court reversed, finding that failure to pay support when not ordered was justifiable cause. Similarly, Matthew argues that he asked the circuit court to award child support, but the circuit court failed to do so; in fact, when the circuit court entered an order finding that Matthew is the biological father of the children, the circuit court reserved the issues of visitation and child support. When a party asks the court to set child support and the court fails to do so, the court cannot later use failure to support as grounds to allow an adoption without the party's consent.

Furthermore, the circuit court's actions in these proceedings—or more aptly, its inactions—provide bases for our holding that Matthew had justifiable cause for not communicating with, or providing support for, his children during the requisite period of time. Both orders of protection, the paternity and visitation claims, and the adoption petition were all before the same circuit judge, who allowed the paternity and visitation issues to be continued for four years, despite the fact that it was uncontested that Matthew is the children's father, and he continually asked for child support and visitation to be set. The adoption petition was filed in September 2020; yet none of these issues were heard until December 2021.[1] On December 14, 2021, the circuit court entered an order in the paternity action finding that Matthew is the biological father of the children but still specifically

---

[1]We recognize that during this time period, the COVID-19 pandemic had disrupted the judicial system, but that issue is not mentioned in any of the case documents.

reserved the issues of child support and visitation; three days later, it granted the Flemings' adoption petition, finding that Matthew's consent was not required. For four years, the circuit court never allowed Matthew the opportunity to show that he could and would support and communicate with his children. The circuit court directly affected the outcome of this case by its failure to do its job—rule on the paternity petition and set child support and visitation in a timely manner. The circuit court should have set child support and visitation—either Matthew would have paid child support and exercised visitation, and these cases would not be before us, or he would not have, and we could clearly determine that Matthew's consent was not required. For these reasons, we hold that the circuit court erred in finding that Matthew did not have justifiable cause for not communicating with, or providing support for, his children; therefore, we reverse the adoption.

Reversed.

ABRAMSON, VIRDEN, GLADWIN, and BROWN, JJ., agree.

HARRISON, C.J., and KLAPPENBACH, GRUBER, and THYER, JJ., dissent.

**BRANDON J. HARRISON, Chief Judge, dissenting**. The circuit court's decision to allow the adoption without Matthew Forrest's consent should be affirmed given the undisputed fact that he failed to provide sufficient care and support for his children. The law requires that we do so on this record. Therefore, I respectfully dissent from the majority's decision to reverse.

The majority opens with an admission that both begins, and ends, this case: "We hold that while [Matthew] Forrest did not support his children and did not communicate with

13

them, he had justifiable cause for doing so[.]"  There is no dispute that, at a minimum, Matthew failed to provide financial support for his children from June 2018 through the date of the hearing in December 2021.  In fact, during the final hearing, Matthew agreed that he had not paid "a dime" during that time.  This fact alone requires us to affirm the adoption, not negate it.  That is the law, whether we like it or not.  Ark. Code Ann. § 9-9-207(a)(2) (Repl. 2020) (A parent's consent to an adoption is not required "if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree.").

The majority acknowledges that Matthew "did not support his children and did not communicate with them" but concludes he had a justifiable cause for doing so.  The justification, according to the majority, is the circuit court's delay.[1]  "The circuit court directly impacted the outcome of this case by its failure to do its job—rule on the paternity petition and set child support and visitation in a timely manner."  The delay is unfortunate.  Granted. But there is no "delay" exception to the adoption statutes.  The majority's disappointment

---

[1]We agree that a circuit court must manage and control its docket in an efficient manner.  *See Johnson v. Bradley*, 2019 Ark. App. 427, 586 S.W.3d 211; *Odaware v. Robertson Aerial-AG, Inc.*, 13 Ark. App. 285, 683 S.W.2d 624 (1985).  In this case, however, the record does not reflect that either counsel pressed the court for a hearing to address these issues before the court itself set the first hearing by mid-2020.  In other words, we respectfully disagree with the majority's characterization that the circuit court "refused" to act.  There was delay, no doubt.  But to place the sole blame on the circuit court and to conclude that it "refused" to act carries a connotation and an assumption that we aren't willing to make on this record.

with the circuit court's pace cannot alone supply the justifiable excuse that Matthew needs to avoid the legal consequence of his admitted lack of support. There is no reason why Matthew could not have tendered some child support to the court directly, thereby honoring his standing legal duty to provide some support for his children, absent a court order that relieved him of the obligation. Matthew could also have put money into a bank account and held it in trust for the children until the matter was finally resolved if he did not believe he could tender it directly to the mother. Matthew could have given money to his own lawyer, who could have, in turn, offered it to the mother's lawyer, and so on. The point is Matthew could have done something; but he did too little under the law, as he himself and the majority acknowledge.

Matthew cites *In re Adoption of A.M.P. and A.A.P.*, 2021 Ark. 125, 623 S.W.3d 571, in which the supreme court held that the circuit court erred when it determined that the father had a duty of child support, even though the parties' February 2015 divorce decree expressly stated neither party shall pay support.

Matthew's reliance on *A.A.P.* is misplaced because the circuit court had affirmatively ordered that *no payment* of support was required. The order in *A.A.P.* positively relieved the father of the usual and standing obligation to provide support to a child. Such was also the case in *French v. Hoelzeman*, 2020 Ark. App. 543, 614 S.W.3d 850, where a California judgment had expressly relieved a father of the obligation to pay child support.[2] In that case,

---

[2]As we explained in *French*:

the father's nonpayment of support was excused in Arkansas based on the California court's judgment, and rightly so. But no court order relieved Matthew of his obligation to support his children (to some degree) according to his means.

Matthew also cites *Neel v. Harrison*, 93 Ark. App. 424, 220 S.W.3d 251 (2005), in which this court noted, "A noncustodial parent whose obligation to provide support is being supervised by such a court order cannot be said to have any 'duty' to provide beyond that imposed by the court." *Id.* at 429, 220 S.W.3d at 255 (quoting *In re Adoption of Glover*, 288 Ark. 59, 62, 702 S.W.2d 12, 13 (1986)). But *Neel* cuts against the majority's new exception to an important adoption statute. In *Neel*, the parties entered an *agreed order* that did not require any parent to pay child support, and the court entered it.[3] There is no agreed order

---

[The Arkansas Supreme court, in] *In re Adoption of A.M.C.*, 368 Ark. 369, 246 S.W.3d 426 (2007), affirmed a circuit court decision that an imprisoned father's consent to adopt was not required. The father had failed to pay child support for nineteen months and was incarcerated for twelve of those months. Although the supreme court agreed that the father's consent was not required, there is an important distinction between *A.M.C.* and this case. The difference is that the father in *A.M.C.* had been *ordered to pay* child support in the parties' divorce decree. 'The decree also incorporated a settlement agreement providing that Lois be the primary physical custodian of A.M.C. and that Paul pay child support to Lois in the amount of $80 per week[.]'

2020 Ark. App. 543, at 12, 614 S.W.3d at 858 (internal citation omitted) (emphasis original).

[3]Here is an excerpt from *Neel*:

Jessica was born to appellant Janie and her then-husband Aaron on December 15, 1995. Janie and Aaron divorced in 1996, and Janie was granted custody at that time. Aaron married appellee Denise in 1998; they eventually

in this case. Indeed, there was no court order at all touching on child support, much less one that can be said to have addressed (in any way) Matthew's obligation to pay some support to his children. Consequently, the legal duty to support his children remained active.

The majority recognizes the long-in-tooth rule that a parent has the duty and obligation—independent of any court order or statute—to support a child. *In re Adoption of Glover*, 288 Ark. 59, 702 S.W.2d 12. Unfortunately, it doesn't apply the rule. Instead, as I have said, the majority focuses all its attention on the circuit court delay as it holds, without citation to authority, that "[w]hen a party asks the court to set child support and the court fails to do so, the court cannot later use failure to support as grounds to allow an adoption without the party's consent." That statement enacts an entirely *new rule* of adoption law, one that seriously challenges established case law and misapplies a vital statute, Ark. Code Ann. § 9-9-207(a)(2).

\* \* \*

bore a daughter of their own. Janie also remarried and bore another child within that marriage. On one occasion in 1999, Janie learned that her husband Joe had thrown Jessica against the wall in their home. Janie called for help and filed a police report; Joe was incarcerated for his actions. This led to Janie and Aaron entering into an agreement that Aaron would have custody of Jessica with Janie having alternate weekend visitation. This agreement was approved in an *agreed order* filed on December 11, 2000, in their Baxter County domestic relations case. *There is no dispute that Aaron did not ask for child support, and the agreed order was silent as to child support*. The agreed order stated that Joe was not to be around Jessica unless Janie or other family members were present.

93 Ark. App. at 424–25, 220 S.W.3d at 252 (emphasis added).

17

The circuit court did not clearly err when it concluded that Matthew had failed significantly and without justifiable cause to provide for the care and support of his children for at least one year. Consequently, Matthew's consent to the adoption of his children was not required under law. I respectfully dissent.

KLAPPENBACH, GRUBER, and THYER, JJ., join.

*Debra Reece Johnson*, for appellant.

*LaCerra, Dickson, Hoover & Rogers, PLLC*, by: *Lauren Hoover*, for appellee.